THOMAS SMITH AND JEANNIE RUTH HEGGINS v. GORDON T. VonCANNON AND KIRK'S TAXI SERVICE, INC.

No. 64

(Filed 12 July 1973)

1. **Rules of Civil Procedure § 50— motion for directed verdict — review by court on appeal**

    The question for a reviewing court on an appeal from a judgment on a directed verdict in favor of the defendant is whether the evidence in the record, considered in the light most favorable to the plaintiffs and giving them the benefit of every reasonable inference therefrom, would have been sufficient to support a verdict in their favor.

2. **Negligence § 59; Trespass § 7— automobile striking house — showing of wrongful act or negligence necessary for recovery of damages**

    Evidence that the defendant drove an automobile off the public highway and across private property so that it struck a building is not sufficient to entitle the innocent owner of the building to recover damages; rather, there must be proof of some wrongful act or neglect of the defendant which was the proximate cause of the injury.

3. **Negligence § 59; Trespass § 1— trespasser — licensee — definitions**

    A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise, while a licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent.

4. **Trespass § 6— acts of landowner — local customs — relevancy on issue of consent**

    Consent to enter land in the possession of another may be implied, and acts of the possessor as well as customs in the community should be considered in determining whether there has been consent to enter.

5. **Trespass § 7— construction of driveway — implied consent to enter**

The construction of a driveway or walkway leading to the entrance of a residence may, in the absence of notice to the contrary, be reasonably construed, not only by acquaintances of the landowner but also by strangers, as an expression of the landowner's consent to their entry thereon for the purpose of approaching and entering the house on any lawful mission.

6. **Trespass § 7— entry into driveway by taxicab — no trespass — taxi striking house during assault by passenger — directed verdict for taxi driver proper**

Where the evidence tended to show that defendant cabdriver entered plaintiff's driveway either to discharge his passenger or to turn around, the passenger assaulted defendant and, in the process of defending himself, defendant allowed his vehicle to roll into plaintiff's house causing damage, the trial court properly directed verdict for defendant in plaintiff's action to recover for damage to the house since the evidence was insufficient to show a trespass upon plaintiff's property by defendant.

APPEAL by plaintiffs from the decision of the Court of Appeals, reported in 17 N.C. App. 438, 194 S.E. 2d 362, rehearing allowed with no change in result, Brock, J., dissenting. The Court of Appeals found no error in the allowance by *Warren, D. J.,* in the District Court of Rowan County, of the defendants' motions for a directed verdict at the close of the plaintiffs' evidence.

On 27 April 1971, the plaintiffs were the owners of a house and lot in the City of Salisbury, known as 206 York Road, and the plaintiff Heggins was in possession of it. The plaintiffs sue for damage to the house caused by a taxicab, owned by Kirk's Taxi Service, Inc., and driven by VonCannon, running into it. They allege that VonCannon was an employee of the taxi company and was acting in the course of his employment. They further allege that his entry on their land was intentional and unauthorized and, therefore, constituted a trespass. The defendants allege that the damage to the property was proximately caused by the criminal act of a passenger in the taxicab, who directed VonCannon to drive to the house and struck him in an attempt to rob him, in the course of which attempt the taxicab moved forward and struck the house.

At the close of the plaintiffs' evidence, the defendants moved for a directed verdict, pursuant to Rule 50 of the Rules of Civil Procedure, upon the ground that the evidence of the plaintiffs failed to prove a claim upon which relief can be granted. It appearing to the district judge that the evidence

failed to show an unlawful trespass by either of the defendants, or other facts upon which relief could be granted, and that the plaintiffs had failed to show that VonCannon was the agent of Kirk's Taxi Service, Inc., the court granted the motion. Judgment for the defendants was entered accordingly.

The plaintiff Heggins testified that on 27 April 1971 she returned to her home about 9:30 p.m. and found that, in her absence, the house had been severely damaged. The house is in a remote area and is the last house on York Road, which dead ends just beyond the driveway leading to the house of the plaintiffs. She was expecting no caller that evening. Just past her driveway there is "a turn around area" at the end of the road, some 50 to 100 feet past the driveway.

Lieutenant George Peeler of the Salisbury Police Department testified that in response to a radio dispatch from police headquarters, about 9:00 p.m., he went to Kirk's taxi stand where he saw the defendant VonCannon in the outer office. VonCannon told Lieutenant Peeler that he had been in his cab at a cab stand when a Negro man got into it, saying he wanted to go "out on Bringle Ferry Road." VonCannon drove out on the Bringle Ferry Road and his passenger then directed him to go "down York Road," which VonCannon did. When he got to the end of York Road, VonCannon "pulled in to the right" and stopped. Thereupon, his passenger hit him two or three times. VonCannon turned around to grab his assailant, but the assailant jumped from the cab and fled. VonCannon told Lieutenant Peeler that he, VonCannon, then drove back to the cab stand and reported what had happened and "they" called the police. It is a mile or more from York Road to Kirk's taxi stand. VonCannon did not use the radio in his cab to report the occurrence. Lieutenant Peeler observed blood on VonCannon and on the front seat of the cab. He also observed the microphone receiver of the cab radio down on the floor board.

The plaintiffs' house is below the level of the road, so that the driveway runs down hill from the road to the house. The alleged assailant of VonCannon has never been arrested. VonCannon told Lieutenant Peeler that he, VonCannon, never lost consciousness after being struck. At the time of the first interview, VonCannon "forgot" to tell Lieutenant Peeler that the taxicab had hit the house. When subsequently interviewed again in the emergency room of the hospital, VonCannon told Lieutenant Peeler that his assailant jumped out of the car when

V.onCannon reached around to grab him, and when VonCannon turned back around, the car "just rolled into the house."

VonCannon's answers to interrogatories were read to the jury. Therein, he described his assailant and stated that he was stopped four to six feet from the house when he was struck. It is 15.5 feet along the driveway from the property line to the wall of the house.

*Burke & Donaldson by Arthur J. Donaldson for plaintiffs.*

*Kluttz & Hamlin by Lewis P. Hamlin, Jr., and Richard R. Reamer for defendants.*

LAKE, Justice.

[1]　The question for the reviewing court on an appeal from a judgment on a directed verdict in favor of the defendant is the same as that presented by an appeal from a judgment of involuntary nonsuit under our practice prior to the adoption of the Rules of Civil Procedure. *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137; *Investment Properties v. Allen,* 281 N.C. 174, 188 S.E. 2d 441; *Cutts v. Casey,* 278 N.C. 390, 180 S.E. 2d 297; *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396. Thus, the question presented by this appeal is whether the evidence in the record, considered in the light most favorable to the plaintiffs and giving them the benefit of every reasonable inference therefrom, would have been sufficient to support a verdict in their favor.

[2]　Evidence that the defendant drove an automobile off the public highway and across private property so that it struck a building is not sufficient to entitle the innocent owner of the building to recover damages. *Schloss v. Hallman,* 255 N.C. 686, 122 S.E. 2d 513; *Smith v. Pate,* 246 N.C. 63, 97 S.E. 2d 457. The right of the owner of the building to recover for such damage to his property must rest on proof of some wrongful act or neglect of the defendant, which was the proximate cause of the injury. *Smith v. Pate, supra; Catoe v. Baker,* 212 N.C. 520, 193 S.E. 735; Restatement, Torts, 2d, § 158, comment e, and § 166.

The plaintiffs do not contend that the cab driver was negligent. Their evidence is that he brought his vehicle to a stop four to six feet from the wall of the house and, thereupon, was suddenly, unexpectedly and violently assaulted by his pas-

---

Smith v. VonCannon

---

senger and, in the ensuing scuffle, the cab rolled down hill and struck the house. This would support an inference that the driver stopped the car, held his foot on the driving brake but did not set the parking brake. In the absence of any evidence that he should have anticipated such an assault by his passenger, this would not constitute negligence. Neither would his removal of his foot from the driving brake in the course of the sudden, unexpected assault upon him constitute negligence. One faced with a sudden emergency, not reasonably to be anticipated, is not held to a standard of care greater than that which a reasonable person would exercise under like circumstances. *Schloss v. Hallman, supra.*

The plaintiffs contend that they are entitled to recover because the cab driver was a trespasser on their property. If so, he would be liable for all damage proximately resulting from his wrongful entry and, at least, for nominal damages. *Lee v. Stewart,* 218 N.C. 287, 10 S.E. 2d 804; *Newsom, v. Anderson,* 24 N.C. 42; *Dougherty v. Stepp,* 18 N.C. 371; 7 Strong, N. C. Index 2d, Trespass, § 8. If the plaintiffs are entitled to even nominal damages, the directed verdict in favor of the defendants would be error. *Lee v. Stewart, supra.*

[3] "A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise." Restatement, Torts, 2d, § 329. Conversely, "A licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent." Restatement, Torts, 2d, § 330. Having such privilege the licensee is not liable in damages for such entry. Dobbs, Trespass to Land in North Carolina, 47 N.C. Law Rev. 31, 50.

The defendants do not contend that the cab driver had a right to enter upon the land of the plaintiffs, except insofar as such right was acquired through their consent. One who enters upon the land of another with the consent of the possessor may, by his subsequent wrongful act in excess or abuse of his authority to enter, become liable in damages as a trespasser. *Freeman v. Acceptance Corporation,* 205 N.C. 257, 171 S.E. 63. In the present case, however, there is no evidence of any voluntary act by the cab driver after he brought his vehicle to a stop following the initial entry onto the property of the plaintiffs.

Had the cab driver originally brought his cab to a stop on the highway and, thereafter, due to the assault upon him by his passenger, the cab had rolled down the driveway and struck the house, this would not have been a trespass rendering the driver liable for such damage. *Schloss v. Hallman, supra.* "Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent entry on land in possession of another, or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest." Restatement, Torts, 2d, § 166. See also, 52 AM. JUR. Trespass, § 7; 7 Strong, N. C. Index 2d, Trespass, § 1; Dobbs, Trespass to Land in North Carolina, 47 N. C. Law Rev. 31, 32. At least, so far as the liability of the intruder to the landowner is concerned, as the Supreme Court of Massachusetts has said, "The trend of modern authority is that an unintended intrusion upon the land in possession of another does not constitute a trespass." *Edgarton v. H. P. Welch Co.,* 321 Mass. 603, 74 N.E. 2d 674, 174 A.L.R. 462. See, however, annot., 174 A.L.R. 471, criticizing the Massachusetts decision for extending this rule to the matter of the liability of the landowner for injury to such intruder, a point not presently before us. We perceive no basis for a distinction between an involuntary intrusion upon the land of another and an involuntary exceeding of the landowner's assent to the original entry, so far as liability for damage to the land is concerned. Therefore, unless the cab driver's original entry into the driveway of the plaintiffs was a trespass, there is no basis upon which he, and so his employer, can be held liable for the damage to the house.

[4] The plaintiffs' right to recover in this action depends, therefore, upon whether the cab driver entered their driveway with or without their apparent consent. "An entry on land in the possession of another is privileged as against the possessor in so far as it is pursuant to his consent * * * . " Restatement, Torts, § 167. The consent of the person in possession of the land to such entry may be implied. 52 AM. JUR., Trespass, § 39. An apparent consent is sufficient if brought about by acts of the possessor. It need not be an invitation to enter, which carries with it the idea of a desire on the part of the one in possession that such entry be made. It is sufficient that his conduct be such as to indicate that he consents to the entry, if the other

person desires to come upon the land. Restatement, Torts, 2d, § 330, comments b, c, d and e; 52 AM. JUR., Trespass, § 39; 87 C.J.S., Trespass, § 49, b; Dobbs, Trespass to Land in North Carolina, 47 N.C. Law Rev. 31, 52; Prosser on Torts, § 60.

In determining whether one who enters upon the land of another could reasonably have concluded from the conduct of the landowner that he had permission to do so, regard is to be had to customs prevailing in the community. " 'The well-established usages of a civilized and Christian community' entitle everyone to assume that a possessor of land is willing to permit them to enter for certain purposes until a particular possessor expresses unwillingness to admit them. Thus, a traveler who is overtaken by a violent storm or who has lost his way, is entitled to assume that there is no objection to his going to a neighboring house for shelter or direction." Restatement, Torts, 2d, § 330, comment e.

In the present case, there was no communication between the plaintiffs and the cab driver prior to the entry. The consent of the landowners to the entry, if any, must be predicated upon the existence of the driveway leading into their property from the public street. The record shows that the cab entered the driveway and stopped four to six feet from the wall of the house and that the house is 15 and one-half feet from the property line. Thus, the cab was brought to a stop approximately within its own length inside the plaintiffs' property and upon the driveway.

[5] In *Breard v. Alexandria*, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233, 35 A.L.R. 2d 335, Mr. Justice Reed, speaking for the Court, said, "It is true that the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers for all kinds of salable articles." See also, 52 AM. JUR., Trespass, § 39. Likewise, the construction of a driveway or a walkway leading to the entrance of a residence may, in the absence of notice to the contrary, be reasonably construed, not only by acquaintances of the landowner but also by strangers, as an expression of the landowner's consent to their entry thereon for the purpose of approaching and entering the house on any lawful mission.

[6] The cab driver's right to enter such driveway is as extensive as the apparent right of his passenger. See, *Airport Authority v. Stewart*, 278 N.C. 227, 232, 179 S.E. 2d 424. In the absence of notice to the contrary, a stranger to the occupant of a house is entitled to assume that he may walk to the front door thereof, or drive into the driveway for that purpose, without being sued for trespass. A cab driver carrying his passenger to the house is entitled, in the absence of notice to the contrary, to make the same assumption in assisting his passenger on arrival thereat.

The evidence in the record before us does not show specifically that the passenger in the taxicab directed VonCannon to carry him to the plaintiffs' residence. However, it does show that he directed the driver to carry him down York Road and that this was the last house on that dead-end street. Nothing else appearing, the driver could reasonably conclude that his passenger, not having directed him to stop at any other house on the street, had this, the last one, as his destination.

Assuming that the passenger did not indicate that this house was his destination, there was nothing for the cab driver to do but turn around, York Road coming to a dead-end a few feet beyond this driveway. While the diagram of this location, which is part of the record, indicates that, at the end of York Road some 50 to 100 feet further, there was an area, to the driver's left, used for turning, there is nothing in the record to show that this area, itself, was not on private property. The custom of motorists in such a situation to head into a driveway for the purpose of backing out and turning around is widespread. In the absence of any contrary indication, it was not unreasonable for VonCannon to conclude that he might go upon the plaintiffs' driveway for this purpose without incurring liability to an action for trespass; that is, to construe the presence of the driveway as indicating the plaintiffs had no objection to its use to the extent necessary for this purpose.

Considering the evidence in the record in the light most favorable to the plaintiffs, we conclude that it fails to show a trespass upon their property by VonCannon and, therefore, is not sufficient to support a verdict and judgment against him. The plaintiffs' cause of action against Kirk's Taxi Service, Inc., is based entirely upon the doctrine of *respondeat superior*. Since VonCannon is not liable, his employer is not, even if the

Smith v. VonCannon

record be deemed sufficient to show that the master-servant relation existed with reference to this occurrence.

There was no error in the granting of the motion for a directed verdict as to each defendant. We, therefore, do not reach the questions argued by the plaintiffs concerning the admissibility of evidence as to damages.

No error.