STEVE SINGLETON, Plaintiff-Appellee v. HAYWOOD ELECTRIC MEMBERSHIP
CORPORATION, Defendant-Appellant

No. COA01-467

(Filed 2 July 2002)

### 1. Utilities— installation of new lines and poles—trespass

The trial court did not err by granting partial summary judgment for plaintiff (with the issue of damages tried later) in an action for trespass which arose when an electric cooperative repaired a downed power line with new power poles and new lines, cutting apple trees in the process. There is no evidence of an express easement for placement of the poles or utility lines; although the Rules and Regulations governing membership in the cooperative state that necessary easements or rights of way are to be provided, the record does not include an express easement; and there is no prescriptive easement through the utility lines which were being replaced because there is no evidence that this was anything more than mere use. In order to overcome the presumption of permissive use, there must be some evidence that the use is hostile.

### 2. Appeal and Error— assignment of error—required

An argument not set out as an assignment of error was not preserved for appellate review.

Judge WALKER dissenting.

Appeal by defendant from judgment filed 19 October 2000 by Judge Loto G. Caviness in Superior Court, Haywood County. Heard in the Court of Appeals 30 January 2002.

*Smathers & Norwood, by Patrick U. Smathers, for plaintiff-appellee.*

*Parker Poe Adams & Bernstein L.L.P., by David N. Allen, Jack L. Cozort and Mitchell P. Johnson, for defendant-appellant.*

McGEE, Judge.

Haywood Electric Membership Corporation (HEMC) is a rural electric cooperative enterprise that is owned by its consumer members. Steve Singleton (plaintiff) first became a member of HEMC in August 1966 when he signed a membership application in which he

agreed to be bound by the rules and regulations (Rules and Regulations) governing membership in HEMC. This application, by its own terms, was only in effect for one year.

Plaintiff signed another application for membership in HEMC in November 1976 in which he agreed to purchase from HEMC "all central station electric power and energy used on any and all premises to which the Cooperative furnishes electric service pursuant to my membership for so long as such premises are owned or directly occupied or used by me." By signing the application, plaintiff also agreed to be bound by the Rules and Regulations which read in part:

V. SECTION V-CONDITIONS OF SERVICE

A. General Conditions:

The Cooperative will supply electrical service to the Member after all of the following conditions are met:

. . .

2. The Member agrees to furnish without cost to the Cooperative all necessary easements and rights-of-way.

. . .

4. The Member agrees that the Cooperative will have right of access to member's premises at all times for the purpose of reading meters, testing, repairing, removing, maintaining or exchanging any or all equipment and facilities which are the property of the Cooperative, or when on any other business between the Cooperative and the Member. . . .

. . .

8. The Member agrees to be responsible for any additional facilities, protective devices, or corrective equipment necessary to provide adequate service or prevent interference with service to the Cooperative's other members. Such loads include, but are not limited to, those requiring excessive capacity because of large momentary current demands or requiring close voltage regulation, such as welders, X-ray machines, shovel loads, or motors starting across the line.

. . .

SINGLETON v. HAYWOOD ELEC. MEMBERSHIP CORP.

[151 N.C. App. 197 (2002)]

D. Right-of-Way Maintenance:

The Member will grant to the Cooperative, and the Cooperative will maintain right-of-way according to its specifications with the right to cut, trim, and control the growth of trees and shrubbery located within the right-of-way or that may interfere with or threaten to endanger the operation or maintenance of the Cooperative's line or system. . . .

. . .

VIII. SECTION VIII-COOPERATIVE AND MEMBER
        OBLIGATIONS

. . .

B. Responsibility of Member and Cooperative:

. . . The Cooperative will not be liable for loss or damage to any . . . property, . . . resulting directly or indirectly from the use, misuse, or presence of the said electric service . . . or for the inspection or repair of the wires or equipment of the Member.

It is understood and agreed that the Cooperative is merely a supplier of electric service, and the Cooperative will not be responsible for any damage or injury to the buildings . . . or other property of the Member due to lighting, defects in wiring or other electrical installations, defective equipment or other cause not due to the negligence of the Cooperative. . . .

In maintaining the right-of-way, the Cooperative will not be liable for damage to trees, shrubs, lawns, fences, sidewalks or other obstructions incident to the installation, maintenance or replacement of facilities, unless caused by its own negligence.

Plaintiff purchased the real property at issue in this appeal in September 1995. Plaintiff testified that at the time of purchase, only a "short service pole" was located on the property. He also stated that "two small black [power] lines" ran across the property that were "about three-eights of an inch" in size. Plaintiff described these lines as being approximately three hundred feet above the ground. At the time he purchased the property, HEMC provided and continues to provide electrical service to the property.

Following an ice storm on or about 21 February 1998, plaintiff noticed that a power line was down on the property and he called HEMC to report the downed line. Three days later, he again tele-

phoned HEMC to come and repair the downed line. Plaintiff met with Gary Best, an HEMC employee, and requested repairs be performed and that no vehicles enter onto his property in making the repairs. Following this conversation, an employee of HEMC entered the property and exchanged the utility lines, placed new poles on the property and cut limbs from approximately twelve trees on plaintiff's property. Plaintiff testified that when he went back to the property he saw that "apple trees [had been] cut in half, three poles [had been] set on [his] property that had [] never been there before." Additionally, he stated that four lines were added that were approximately thirty feet from the ground and these lines were "at least twice as large as the others, maybe three or four times" larger.

Plaintiff filed a complaint against HEMC on 17 November 1999, alleging HEMC was liable for damages based upon theories of trespass, inverse condemnation and conversion. Plaintiff later voluntarily dismissed his claims of inverse condemnation and conversion. Plaintiff filed a motion for partial summary judgment on the issue of trespass liability on 14 September 2000. At a hearing on 2 October 2000, HEMC also orally moved for summary judgment. The trial court granted plaintiff's motion for partial summary judgment in an order which stated in part

> that there are no factual disputes and that [HEMC] does not have an express or prescriptive easement for placing utility lines, poles, or other electrical transmission equipment upon Plaintiff's real property, and that the actions of [HEMC] constitutes trespass and a continuing trespass, and that [HEMC] is liable to Plaintiff for damages and such other relief as by law provided.

This order was entered on 6 October 2000.

The issue of damages was tried before a jury on 9 October 2000. The jury determined that plaintiff was entitled to recover the amount of $700.00 per month for rental from HEMC. The trial court entered judgment on 19 October 2000, stating in part

> 1. That summary judgment was previously granted to Plaintiff wherein it was determined that [HEMC] does not have an express or prescriptive easement for the placing of power poles, transmission lines, or other electrical equipment upon Plaintiff's real property.
>
> 2. That Plaintiff took a voluntary dismissal without prejudice on the claims of inverse condemnation and conversion of

SINGLETON v. HAYWOOD ELEC. MEMBERSHIP CORP.

[151 N.C. App. 197 (2002)]

Plaintiff's real property, leaving the claims for trespass and injunctive relief for determination.

The trial court then concluded as a matter of law

1. That Plaintiff is entitled to recover of [HEMC] the sum of $700.00 per month from February 21, 1998 through October 10, 2000.

2. That Plaintiff is entitled to have the poles, electrical lines, and other miscellaneous transmission equipment removed from Plaintiff's real property to terminate the continuous trespass.

3. That [HEMC] is liable for any additional rent or other damages sustained from October 10, 2000 until such time as [HEMC] ceases to trespass upon Plaintiff's property.

4. That Plaintiff is entitled to recover costs incurred in this matter.

5. That Plaintiff is entitled to recover of [HEMC] interest on the sum awarded by the Jury from the date of filing (November 17, 1999) until paid, pursuant to G.S. 24-5 (b).

The trial court awarded plaintiff a total of $22,125.80 as rental, ordered HEMC to remove all utility lines, poles and other equipment from plaintiff's property and be liable for rental sums until the lines, poles and equipment were removed, and awarded plaintiff $1,591.72 in interest, and $411.87 in costs. From this judgment, HEMC appeals.

HEMC raises three assignments of error on appeal; however, argues only two assignments of error in its brief. Therefore, the remaining assignment of error is deemed abandoned. N.C.R. App. P. 28(a); *State v. Stanley*, 288 N.C. 19, 26, 215 S.E.2d 589, 593-94 (1975) ("[I]t is well recognized that assignments of error not set out in appellant's brief, and in support of which no arguments are stated or authority cited, will be deemed abandoned.").

[1] HEMC contends on appeal that the trial court erred in granting plaintiff's motion for partial summary judgment because no genuine issues of material fact exist and HEMC was entitled to judgment as a matter of law.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56 (c) (1999). By entering summary judgment, the trial court rules only on questions of law; summary judgment is therefore fully reviewable on appeal. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

HEMC argues that the placement of the power poles and utility lines on plaintiff's property does not constitute trespass because the placement was authorized by the Rules and Regulations which plaintiff agreed to be bound by; therefore, no wrongful entry on plaintiff's property occurred.

Plaintiff does not dispute that he agreed to abide by the Rules and Regulations, but contends that the scope of the Rules and Regulations does not extend to the placement of the new poles and utility lines.

The Rules and Regulations state that HEMC will supply electrical service to a member after the member agrees to furnish all necessary easements and rights-of-way. However, the trial court found that no express or prescriptive easements existed on plaintiff's property for the placement of the power poles, utility lines or other electrical transmission and their placement on plaintiff's property therefore constituted a trespass.

"A trespass is a wrongful invasion of the possession of another." 28 Strong's N.C. Index 4th *Trespass* § 1 (1994). *See also Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952). Our Supreme Court has stated that the term "continuing trespass" includes "wrongful trespass upon real property, caused by structures permanent in their nature and made by companies in the exercise of some *quasi-*public franchise." *Oakley v. Texas Co.*, 236 N.C. 751, 753, 73 S.E.2d 898, 898 (1953) (citing *Sample v. Lumber Co.*, 150 N.C. 161, 165-66, 63 S.E. 731, 732 (1909)). We must determine whether the trial court correctly concluded that HEMC's placement of the power poles and utility lines was wrongful and therefore constitutes a trespass.

There is no evidence in the record in this case that an express easement exists for the placement of poles or the utility lines on plaintiff's property. An express easement must be in writing pursuant to the Statute of Frauds and be sufficiently certain to permit the identification and location of the easement with reasonable certainty. *Prentice v. Roberts*, 32 N.C. App. 379, 383, 232 S.E.2d 286, 288, *disc.*

*review denied*, 292 N.C. 730, 235 S.E.2d 784 (1977). "The burden of proving that a sufficient writing exists [of] the conveyance of [an] easement is on the party claiming its existence." *Tedder v. Alford*, 128 N.C. App. 27, 31, 493 S.E.2d 487, 490 (1997), *disc. review denied*, 348 N.C. 290, 501 S.E.2d 917 (1998). There is no evidence in the record of any document signed by plaintiff describing an express easement granted to HEMC. In fact, HEMC concedes in its brief to our Court that no recorded easement exists when it states that "[HEMC] electric lines have crossed the property now owned by [plaintiff] for more than fifty years without recorded easement or right-of-way." Therefore, no express easement permitted HEMC to enter plaintiff's property to place the new power poles or utility lines.

Although the Rules and Regulations state that necessary easements and/or rights-of-way are to be provided by HEMC members, this provision does not give HEMC the right to create an easement if one does not already exist, but at most gives HEMC the power to require its members to create an easement for the benefit of HEMC. Even if HEMC did intend to create an easement, the burden is on HEMC to show an express easement has been created and the record does not include such an express easement.

Also, the record does not show that HEMC has a prescriptive easement which would permit placement of the power poles and new utility lines on the property.

> To establish a prescriptive easement, a party must prove by a preponderance of the evidence: "(1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period."

*Pitcock v. Fox*, 119 N.C. App. 307, 309, 458 S.E.2d 264, 266 (1995) (quoting *Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981)).

"In establishing the prescriptive easement, the party must overcome the presumption that the party is on the true owner's land with the owner's permission." *Pitcock*, 119 N.C. App. at 309, 458 S.E.2d at 266 (citing *Johnson v. Stanley*, 96 N.C. App. 72, 74, 384 S.E.2d 577, 579 (1989) and *Dickinson v. Pake*, 284 N.C. 576, 580-81, 201 S.E.2d 897, 900 (1974)). In order to overcome this presumption, "[t]here

must be some evidence accompanying the user which tends to show that the use is hostile in character and tends to repel the inference that it is permissive and with the owner's consent." *Dickinson*, 284 N.C. at 581, 201 S.E.2d at 900. A party's "[e]ntitlement to an easement by prescription is restricted because a landowner's ' " 'mere neighborly act' " ' of allowing someone to pass over his property may ultimately operate to deprive the owner of his land." *Johnson v. Stanley*, 96 N.C. App. 72, 74, 384 S.E.2d 577, 579 (1989) (quoting *Potts v. Burnette*, 301 N.C. 663, 667, 273 S.E.2d 285, 288 (1981) (citation omitted)). Therefore, "mere use alone is presumed to be permissive, and, unless . . . rebutted . . . will not ripen into a prescriptive easement." *Johnson*, 96 N.C. App. at 74, 384 S.E.2d at 579 (citing *Dickinson v. Pake*, 284 N.C. 576, 580-81, 201 S.E.2d 897, 900 (1974)).

In this case, although the utility lines had run across plaintiff's property for more than fifty years, there is no evidence in the record to show that this use by HEMC of plaintiff's land constituted anything more than mere use. The record fails to show that HEMC had a prescriptive easement upon which to place either utility lines over plaintiff's property or new power poles on plaintiff's property where none previously existed.

**[2]** HEMC additionally argues that plaintiff should be estopped from asserting that HEMC has trespassed because plaintiff's action for trespass is an attempt to enjoy the benefits of membership in HEMC without accepting the terms and qualifications of membership. However, HEMC failed to set out this argument as an assignment of error in the record on appeal. Therefore, pursuant to the N.C. Rules of Appellate Procedure, defendant has failed to properly preserve this question for appellate review. N.C.R. App. P. 10 (a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal.").

The trial court did not err in determining there are no genuine issues of material fact and that plaintiff is entitled to judgment as a matter of law. The trial court's judgment is affirmed.

Affirmed.

Judge BIGGS concurs.

Judge WALKER dissents with a separate opinion.

SINGLETON v. HAYWOOD ELEC. MEMBERSHIP CORP.

[151 N.C. App. 197 (2002)]

WALKER, Judge, dissenting.

I respectfully dissent from the majority opinion which affirms the granting of summary judgment in favor of plaintiff on the issue of trespass and I would reverse the order and judgment of the trial court.

In this case, plaintiff has been a member of HEMC since 1966. The property in question is owned by plaintiff and serviced by HEMC. As the majority notes, plaintiff and this property were subject to the Service Rules and Regulations through a written contract which plaintiff signed. In pertinent part, the contract provides:

V. SECTION V—CONDITIONS OF SERVICE

A. General Conditions:

. . .

4. The Member agrees that the Cooperative will have right of access to member's premises at all times for the purpose of . . . *repairing, removing, maintaining or exchanging any or all equipment and facilities* which are the property of the Cooperative . . . .

. . .

D. Right-of-Way Maintenance:

The Member will grant to the Cooperative, and the Cooperative will maintain right-of-way according to its specifications with the right to cut, trim, and control the growth of trees and shrubbery located within the right-of-way *or that may interfere with or threaten to endanger the operation or maintenance of the Cooperative's line or system* . . . .

(emphasis added).

After an ice storm in February of 1998, plaintiff contacted HEMC and requested it to come onto his property because one of HEMC's electrical wires had broken and fallen onto plaintiff's garage. The affidavit of Ronnie Allen, an employee of HEMC, stated the following in part:

2. During February of 1998, I went to Mr. Steve Singleton's property to put back up electrical lines that had come down as a result of an ice storm. Our records reveal that the transmission line at issue has been in place for over fifty years. In February of 1998

there were 178 meters on that line past the property of the Plaintiff. On the date in question those customers were without power.

3. It was obvious to me that the existing copper wire and supporting poles were not adequate since they had failed. We therefore determined to replace the old copper wire with aluminum which is stronger. We further determined that safety concerns dictated that the pole on the top of the ridge just outside the fence to Mr. Singleton's property needed to be replaced with a stronger pole. Two additional poles were also needed to be installed to provide additional support between the ridges. We placed one between U.S. Highway 276 and the Pigeon River and the other about halfway up the ridge going toward the back of Mr. Singleton's property. To the best of my knowledge, we only placed two poles on Mr. Singleton's property.

While repairing and exchanging the wires, HEMC cut about a dozen apple trees which were in the path of the new wire.

" 'A trespasser is a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.' " *Smith v. VonCannon*, 283 N.C. 656, 660, 197 S.E.2d 524, 528 (1973) (citations omitted). "One who enters upon the land of another with the consent of the possessor" is not liable in trespass unless he commits a "wrongful act in excess or abuse of his authority to enter." *Id.* Consent may be actual, through written contract or an oral agreement, or it can be implied from the circumstances. *See Smith*, 283 N.C. at 661-62, 197 S.E.2d at 529; *Rawls & Assoc. v. Hurst*, 144 N.C. App. 286, 292, 550 S.E.2d 219, 224, *disc. rev. denied*, 354 N.C. 574, 559 S.E.2d 183 (2001) ("Consent may be implied and an apparent consent may be sufficient if it is brought about by the acts of the person in possession of the land. There does not have to be an invitation to enter the land[;] it is sufficient that the possessor's conduct indicates that he consents to the entry").

Here, the contract granted a right of access to HEMC to enter the property in question to repair, remove, maintain, or exchange the equipment owned by HEMC. The contract further granted HEMC the right to cut and trim trees and shrubbery which "may interfere with or threaten to endanger the operation or maintenance of the Cooperative's line or system." When the line fell, plaintiff requested HEMC to come onto his property to repair the line.

SINGLETON v. HAYWOOD ELEC. MEMBERSHIP CORP.

[151 N.C. App. 197 (2002)]

In its judgment, the trial court ordered HEMC, among other things, to "remove all power lines." A significant fact, which seems to have been overlooked here, is that for over fifty years, pursuant to the agreement, a copper utility wire has been located across plaintiff's property. Only after an ice storm, whereby the wire was broken, did HEMC undertake to replace the copper wire with a stronger aluminum wire and provide further stability by lowering the wire and installing three additional poles to which the new wire was attached.

Regardless of whether there was an easement granted, HEMC had the express permission of plaintiff, both through the contract and from the plaintiff himself, to enter the property to repair and exchange the lines which had fallen. In doing so, HEMC was required, for safety reasons, to place new wire and poles on the property in exchange for the old wire which broke under the ice. For there to be trespass, there must be a determination of whether this action on the part of HEMC was a "wrongful act in excess or abuse of [its] authority."

The majority upholds the trial court's granting of summary judgment in favor of plaintiff on the issue of trespass on the basis that "Defendant does not have an express or prescriptive easement for placing utility lines, poles, or other electrical transmission equipment upon Plaintiff's real property." I strongly disagree that an act of trespass has been established, as a matter of law, on the basis determined by the trial court and upheld by this Court. I would remand the case to the trial court for a determination of whether HEMC committed an act in excess of the authority granted under the service rules and regulations.

I also note that the majority holds that HEMC failed to preserve the issue of estoppel for review on appeal. HEMC took exception to the granting of summary judgment in favor of plaintiff which I deem would include the grounds of estoppel. I find this issue should be allowed to be asserted on remand.