IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-143

No. 21A21

Filed 16 December 2022

UNITED DAUGHTERS OF THE CONFEDERACY, NORTH CAROLINA DIVISION, INC., and JAMES B. GORDON CHAPTER #211 of THE UNITED DAUGHTERS OF THE CONFEDERACY, NORTH CAROLINA DIVISION, INC.

v.

CITY OF WINSTON-SALEM, by and through ALLEN JOINES, MAYOR OF WINSTON-SALEM, NORTH CAROLINA, FORSYTH COUNTY; COUNTY OF FORSYTH, NORTH CAROLINA, by and through DAVID R. PLAYER, CHAIRMAN OF THE BOARD OF COMMISSIONERS; and WINSTON COURTHOUSE, LLC

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 275 N.C. App. 402 (2020), affirming an order entered on 8 May 2019 by Judge Eric C. Morgan in Superior Court, Forsyth County, granting defendants' motions to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Heard in the Supreme Court on 29 August 2022.

*James A. Davis for plaintiff-appellants.*

*Anargiros N. Kontos, Deputy City Attorney, and Angela I. Carmon, City Attorney, for defendant-appellee City of Winston-Salem.*

*B. Gordon Watkins III, County Attorney, for defendant-appellee Forsyth County.*

*Allman Spry Davis Leggett & Crumpler, P.A., by Jodi D. Hildebran; and Nelson Mullins Riley & Scarborough LLP, by Lorin J. Lapidu,s for defendant-appellee Winston Courthouse, LLC.*

*Mark Dorosin and Elizabeth Haddix for Chatham for All, North Carolina Commission on Racial & Ethnic Disparities in the Criminal Justice System, Dr. Joyce Blackwell, Dr. Phillip A. Clay, Algin Holloway, Patrice High, Edith A. Hubbard, Walter Jackson, Bradley Johnson, Philip McAlpin, Angelia Euba McKoy, Henry Clay McKoy, Lisa V. Moore, Moses G. Parker, Melvin L. Watt, Melvin L. Williams, Camille Z. Roddy, and Jimmy Barnes, amici curiae.*

*Matthew R. Joyner and H. Edward Phillips for Sons of Confederate Veterans, amicus curiae.*

ERVIN, Justice.

In this case, plaintiff United Daughters of the Confederacy, North Carolina Division, Inc., challenges a decision made by defendant City of Winston Salem to remove a Confederate monument from the grounds of the former Forsyth County Courthouse.[1] Although the courthouse and surrounding real property was originally owned by defendant Forsyth County, the County had sold the property to defendant Winston Courthouse, LLC, a private entity that had converted the courthouse building into private residential apartments, prior to the monument's removal. The trial court granted defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A-1, Rule 12(b)(1), and failure to state a claim upon which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), and

---

[1] On 1 May 2019, following the trial court's hearing concerning defendants' dismissal motions, plaintiff James B. Gordon Chapter # 211 of the United Daughters of the Confederacy filed a notice of voluntary dismissal without prejudice. In light of that fact, the term "plaintiff" as used throughout the remainder of this opinion should be understood as referring to the United Daughters of the Confederacy, North Carolina Division, Inc.

the Court of Appeals affirmed the dismissal order in a non-unanimous decision. The issue before this Court on appeal is whether the facts alleged in plaintiff's amended complaint were sufficient to establish that plaintiff had standing to challenge the City's action. After careful consideration of the record in light of the applicable law, we hold that, even though plaintiff lacks standing to proceed in this case, the trial court erred in dismissing the amended complaint with prejudice. As a result, we affirm the decision of the Court of Appeals, in part; reverse that decision, in part; and remand this case to Superior Court, Forsyth County, for further proceedings not inconsistent with this opinion.

## I.    Factual Background

### A. Substantive Facts

Plaintiff is a nonprofit corporation organized under the laws of the State of North Carolina, having first registered with the Secretary of State in 1992. According to the allegations contained in plaintiff's amended complaint, in 1903 the James B. Gordon Chapter #211 of the United Daughters of the Confederacy "began a movement to place a Confederate monument in Court House Square in Winston, North Carolina." In its complaint, plaintiff alleges that the local chapter had approved a proposed design for the monument, initiated plans "to obtain a monument at a cost of no more than $3,000.00," and launched a fundraising campaign to raise money for the monument's construction.

¶ 3 Plaintiff further alleges that, "on or about March 1, 1905, the Forsyth County Board of County Commissioners issued an order granting to the Plaintiff, formerly known as the Daughters of the Confederacy, permission to erect a memorial to the fallen soldiers of the Confederacy . . . upon property of the County of Forsyth."[2] In addition, the complaint alleges that, "on or about October 4, 1905, a ceremony sanctioned by the Board of County Commissioners was conducted during which the Confederate Monument was dedicated." Finally, the amended complaint alleges that, sometime around March 2012, while acting "on behalf of the County of Forsyth, North Carolina," Ashley Neville and John Salmon of Ashley Neville, LLC, nominated the old Forsyth County Courthouse for placement on the National Register of Historic Places, with that nomination having been accepted "[o]n or about April 23, 2013[.]" Plaintiff never makes any claim to own the monument or to have any sort of contractual or property interest in it.

¶ 4 On 18 March 2014, the County executed a general warranty deed conveying the old Forsyth County Courthouse and the surrounding real property to Winston Courthouse, a private real estate developer, by means of a deed that expressly excluded from the sale "a plaque mounted inside the building, time capsule currently buried inside the building, and public monuments located outside of the building on

---

[2] The complaint does not clearly indicate whether the reference to "plaintiff" in this part of the amended complaint refers to the statewide organization or the local chapter.

the land" and provided that Winston Courthouse "agrees to execute necessary easements (in form and content that are reasonably acceptable to both parties) to allow [the County] continued access to maintain and/or remove these items from the land at the expense of [the County]." Subsequently, Winston Courthouse converted the old courthouse building into private residential apartments, with the building having been exclusively used for residential purposes since April 2015. Plaintiff has not alleged or shown that any of the easements contemplated by the deed were ever executed or recorded.

¶ 5 On 18 August 2017, shortly after an outbreak of violence in Charlottesville, Virginia, related to the proposed removal of a statue of Robert E. Lee, the monument was vandalized, with the word "Shame" having been spray painted upon it. According to Assistant City Manager Damon Dequenne, local law enforcement officers subsequently received complaints from a resident of the Winston Courthouse apartments who was "upset about armed guards patrolling the [monument]" after this incident. On 20 August 2017, local law enforcement officers identified "eight (8) concerned citizens standing guard near the [monument]."

¶ 6 In September 2017, Winston-Salem Mayor Allen Joines contacted Salem Cemetery and proposed that the monument be relocated to the cemetery, a proposition that the Salem Cemetery Board considered and approved on 24 October 2017. On 25 December 2018, the monument was vandalized a second time, with the

words "Cowards & Traitors" having been spray-painted on it. According to Mr. Dequenne, this incident "raised concerns that someone might try to topple the [monument] in a manner similar to that in Chapel Hill and other cities" and that "any efforts to topple the [monument] might result in injury to persons on the sidewalk as well as private property."

¶ 7    On 31 December 2018, City Attorney Angela Carmon sent a letter to plaintiff's president and registered agent and to Winston Courthouse's management regarding the recent acts of vandalism at the monument.[3] According to Ms. Carmon, the events in question had "invoke[d] significant concern about the safety of the [monument] and the potential for confrontation, breaches of the peace[,] and other nuisance type conduct similar to that endured by other cities," with the City not being "in a position to provide constant security checks necessary for the protection of the [monument] and to mitigate the recuring acts of vandalism." In addition, Ms. Carmon stated that the monument "does not appear" to be "publicly owned" and that "[c]laims of ownership of the [monument] have come from the United Daughters of the Confederacy." In light of existing "concerns for overall public safety and protection of the [monument]," Ms. Carmon "direct[ed] [plaintiff] to remove and relocate by January 31st the [monument] from its present location to a more secure location where the same can be protected from vandals and others looking to create a

---

[3] Ms. Carmon's letter was also addressed to a representative of the local chapter.

Charlottesville type incident in Winston-Salem," noting that a "[f]ailure to comply with this direction may result in the [C]ity seeking a court order for the removal and relocation of the [monument] to preserve the same and to address public safety concerns[.]" On 8 January 2019, counsel for Winston Courthouse sent a letter to plaintiff's representatives stating that "the recent controversy, press reports, and references to potential violence have raised serious concerns for some of [Winston Courthouse's] residents" and that, "in order to protect the residents and the [p]roperty," Winston Courthouse "cannot allow the [monument] to remain on the [p]roperty."

¶ 8 At the public comment portion of the 7 January 2019 Winston-Salem City Council meeting, several City residents spoke in favor of removing or relocating the monument. On 13 January 2019, protests occurred near the monument during which people expressed both support for and opposition to the monument's continued presence in its current location. According to Assistant City Manager Dequenne, the Winston-Salem Police Department "planned and executed a riot and emergency type operation using ninety-three (93) officers who expended in excess of four-hundred and sixty-five (465) man hours . . . in an effort to protect the [monument] and the public." In addition, Mr. Dequenne noted that the police department's bike patrol had continued to actively monitor the monument following the initial act of vandalism that occurred in 2017. Additional City residents voiced strong support for the

removal of the monument during the public comment portion of the 22 January 2019 City Council meeting, with some speakers having suggested that the monument should be destroyed rather than relocated.

On 25 January 2019, counsel for plaintiff hand-delivered a letter to defendants in which it requested a 60-day extension of the deadline for the removal of monument.[4] On 30 January 2019, Mr. Dequenne issued a notice declaring that the monument was a public nuisance in accordance with N.C.G.S. § 160A-93 and Winston Salem City Code § 62-3(b) on the grounds that "the continued presence of the [monument] at its current location is detrimental to the safety and longevity of the [monument] and prejudicial to public safety." In support of this determination, Mr. Dequenne pointed to "all that has occurred with Confederate Statues over the past sixteen months," including (1) "the toppling of the [Silent Sam] statue in August 2018 in Chapel Hill"; (2) "the December 2018 vandalism [of the monument] in Winston-Salem"; (3) "the expressions of concern regarding citizen safety both in 2017 and 2018"; (4) "the protest events here in Winston-Salem"; (5) "comments made at the Winston-Salem City Council's public comment periods"; (6) "calls for destruction of the [monument]"; and (7) "the potential for toppling the same," all of which caused

---

[4] Although the 25 January 2019 letter is not included in the record, other portions of the record suggest that the letter advanced many of the same legal arguments regarding the monument upon which plaintiff has relied before this Court.

him to conclude that "the potential for harm to the [monument] and citizens was legitimate and the potential for harm looming."

¶ 10    On the same day, City Attorney Carmon denied plaintiff's request for additional time to remove the monument on the grounds that "the totality of the circumstances suggests that [plaintiff's] request is made in an effort to cause an unnecessary delay in action by the City," with plaintiff having been "made aware of the City's public-safety related concerns regarding the [monument] more than sixteen (16) months ago." As a result, despite the existence of uncertainly about the ownership of the monument, the City indicated that it would, in accordance with the earlier public nuisance declaration, summarily remove the monument from the old courthouse property without seeking a court order. Winston Courthouse agreed to cooperate with the City's efforts to remove the monument.

¶ 11    On 12 March 2019, the City had the monument removed from the old courthouse property and placed in storage, where it would remain until it could be moved to the Salem Cemetery. At that time, the City informed plaintiff that it was "more than willing to make the [monument] available to [plaintiff if] it wish[ed] to retrieve the [monument] from storage" and that it would pay for the monument's relocation, at no cost to plaintiff, "upon property [where] [plaintiff] has clear written permission to place the [monument], provided the location is not prejudicial to public safety."

**B. Procedural History**

On 31 January 2019, plaintiff filed a complaint against the City and the County in which it sought the issuance of a temporary restraining order and preliminary injunction enjoining defendants "from taking affirmative action to remove or relocate the [monument] prior to a full adjudication of the respective rights and obligations of the Parties[.]"  On 6 February 2019, plaintiff filed an amended complaint in which it added the local chapter as a party plaintiff and Winston Courthouse as a party defendant and sought the entry of a declaratory judgment to determine (1) "the Parties' respective rights, duties, privileges, obligations, liabilities, [and] immunities with regard to the [monument]" and (2) "[w]hether the City of Winston-Salem [has] misapplied [N.C.G.S. §] 160A-193 and City Ordinance 62-3(b) in declaring [that] the [monument] constitutes [a] Public Nuisance," as well as the issuance of a preliminary injunction precluding the relocation of the monument pending resolution of its request for a declaratory judgment.  After a hearing held on 31 January 2019, Judge Stanley L. Allen entered an order on 25 February 2019 in which he denied plaintiff's request the for the entry of a temporary restraining order.[5]

On 8 March 2019, defendants filed separate motions to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to N.C.G.S. § 1A1, Rule

---

[5] Although Winston Courthouse was not named as a party defendant in the original complaint, the order notes that its attorney appeared at the hearing and argued that the motion should be denied.

12(b)(1), and failure to state a claim upon which relief can be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), in which they argued, among other things, that plaintiff lacked standing to challenge the City's decision to remove the monument. On 20 March 2019, plaintiff filed a second amended motion for the issuance of a preliminary injunction in which it alleged that the City had acted unlawfully and in violation of plaintiff's due process rights by removing the monument prior to a determination concerning the merits of defendants' dismissal motion and sought the entry of an order requiring the City to return the monument to the courthouse property. In an affidavit filed in response to plaintiff's motion, Winston Courthouse's manager asserted that Winston Courthouse would be "irreparably harmed" if the monument were to be returned to the old courthouse property on the grounds that the restoration of the monument would result in an unlawful entry upon Winston Courthouse's private property, force Winston Courthouse to incur additional security and legal expenses, and endanger the safety of its residents.

¶ 14    After a hearing held on 29 April 2019, the trial court entered an order on 8 May 2019 granting defendants' dismissal motions. In support of this determination, the trial court noted that plaintiff "has never alleged that it owns the [monument] or that there was ever any contract, lease, or other agreement between [plaintiff] and another entity requiring that the [monument] stay in its location on the land of [Winston Courthouse]." The trial court rejected plaintiff's contention that it had

standing to maintain the present action because "a specific requirement for membership in [p]laintiff organizations is establishing that one is a lineal descendant of [a Confederate soldier]." In light of the fact that plaintiff "has not alleged that it owns the [monument], has not alleged that it has any contractual or other legally enforceable right in the [monument], and has not demonstrated a legally protected interest that would be invaded by Defendants' actions," the trial court concluded that plaintiff had failed to establish standing. The trial court further concluded that plaintiff "has not established that there is any injury in fact that is either concrete or particularized to this specific plaintiff." As a result, for all of these reasons, the trial court concluded that it lacked subject matter jurisdiction over this case and that plaintiff had failed to state a claim upon which relief could be granted and dismissed plaintiff's amended complaint with prejudice. Plaintiff noted an appeal to the Court of Appeals from the trial court's order.

**C. Court of Appeals Decision**

¶ 15     In seeking relief from the trial court's order before the Court of Appeals, plaintiff argued that the trial court had erred by dismissing its complaint for lack of standing given that it "has an abiding and cognizable legal interest in the [monument] because [plaintiff] is a legacy organization which raised the money necessary to design, build, and place the monument on [the old courthouse property]" and that it "was clearly and specifically threatened with adverse consequences if it

failed or refused to remove the [m]onument." In addition, plaintiff argued that, because the trial court had dismissed the amended complaint for lack of subject matter jurisdiction, it had erred by dismissing the amended complaint with, rather than without, prejudice. In plaintiff's view, "[a] court cannot dismiss a complaint with prejudice if it has held that it lacks jurisdiction over the proceeding," citing *Cline v. Teich for Cline*, 92 N.C. App. 257, 264 (1988) (vacating an order dismissing the plaintiff's complaint for failure to state a claim upon which relief could be granted because "the district court lacked subject matter jurisdiction over the present case" and, for that reason, "had no authority to consider whether the [c]omplaint failed to state a claim.").

¶ 16      A divided panel of the Court of Appeals affirmed the trial court's order, with the majority agreeing with the trial court that plaintiff had failed to establish the standing needed to assert the claims alleged in the amended complaint and concluding that dismissal of the amended complaint with prejudice was proper. *United Daughters of the Confederacy v. City of Winston-Salem*, 275 N.C. App. 402 (2020). In upholding the trial court's decision to dismiss plaintiff's amended complaint with prejudice, the Court of Appeals concluded that, "even assuming *arguendo* that it was improper to dismiss the complaint with prejudice on the basis of Rule 12(b)(1), it was not improper to do so on the basis of Rule 12(b)(6), which operates as an adjudication on the merits." *Id*. at 406. In view of the fact that the

trial court dismissed plaintiff's amended complaint based upon both Rule 12(b)(1) *and* Rule 12(b)(6), the Court of Appeals concluded that "the trial court did not err in dismissing the complaint with prejudice pursuant to Rule 12(b)(6), and that any error in doing so pursuant to Rule 12(b)(1) was rendered harmless as a result." *Id.*

¶ 17    The Court of Appeals began its discussion of the standing issue by explaining that, in order to show standing, "a plaintiff must demonstrate three things:  injury in fact, a concrete and actual invasion of a legally protected interest; the traceability of the injury to a defendant's actions; and the probability that the injury can be redressed by a favorable decision." *Id.* at 407 (citing *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 114 (2002)).  For that reason, the Court of Appeals held that "[t]he mere filing of a declaratory judgment" action "is not sufficient, on its own, to grant a plaintiff standing." *Id.* (citing *Beachcomber Prop., LLC v. Station One, Inc.*, 169 N.C. App. 820, 824 (2005)).  Instead, the Court of Appeals held that, in order "to pursue a declaratory judgment as to its rights in the [monument], plaintiff had to show, at the very least, that it possessed some rights in the [monument]—a legally protected interest invaded by defendants' conduct." *Id.* As a result of the fact that, "aside from acknowledging their role in funding the erection of the [monument] over a century ago," plaintiffs had alleged no ownership rights or other legal interest in the monument, *id.* at 408, the Court of Appeals concluded that, since plaintiff had failed to allege an "injury in fact," the trial court

had not erred by dismissing plaintiff's complaint with prejudice pursuant to Rule 12(b)(6), *id.*

¶ 18        In dissenting from his colleagues' decision to affirm the trial court's dismissal order, Judge Tyson stated that he would have concluded that plaintiff had standing to pursue the claims asserted in the amended complaint for the purposes of obtaining relief from what he viewed as the "pre-emptive and unlawful actions of the City of Winston Salem." *Id.* at 409 (Tyson, J., dissenting). According to Judge Tyson, "[t]he pleadings assert and the record raises factual disputes over who currently owns the [monument]," with plaintiff not being required "to claim sole ownership to possess standing in this declaratory judgment action." *Id.* at 412. In Judge Tyson's view, plaintiff had standing to seek the entry of the requested declaratory judgment because the amended complaint "clearly assert[ed] and 'involve[d] an actual controversy between the parties,' " *id* at 413 (quoting *Goldston v. State*, 361 N.C. 26, 30 (2006)), and because plaintiff, "[a]s an association of [c]hapters and members," had associational standing to pursue its claim against defendants, *id.* at 414 (citing *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 130 (1990) (holding that an association has standing to file an action on behalf of its individual members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in

the lawsuit" (quoting *Hunt v. Wash. State Apple Advertising Comm.*, 432 U.S. 333, 343 (1977)).[6]  Judge Tyson believed that plaintiff's members had standing to seek relief from the City's actions because "[i]t is undisputed that the [monument] was paid for and erected by [plaintiff's] members and [c]hapter," that plaintiff's participation in this litigation was "directly related to the stated non-profit and charitable goals of the organization," and that the "claim asserted and the relief requested does not require the participation of the individual members or [c]hapters[.]" *Id.*

¶ 19        In addition, Judge Tyson asserted that, "[a]s a veteran's memorial and a war grave for those who did not return home and [an object] listed on the National Register [of Historic Places], the [monument] is arguably protected from injury or destruction by the 'Veterans Memorial Preservation and Recognition Act of 2003.' " *Id.* at 415 (citing 18 U.S.C. § 1369 (2018) (imposing criminal penalties upon anyone who destroys or attempts to destroy a monument "commemorating the service of any person or persons in the armed forces of the United States" that is located on federally owned or controlled land.)).  According to Judge Tyson, a "veteran" for purposes of the Veterans Memorial Preservation and Recognition Act includes individuals who

---

[6] Judge Tyson also appeared to suggest that plaintiff might have standing to maintain the present action pursuant to the decision of the Court of Appeals in *Fuller v. Easley*, 145 N.C. App. 391, 395 (2001) (holding that a plaintiff "may have standing to bring a taxpayer action, not as an individual taxpayer, but on behalf of a public agency or political subdivision, if the proper authorities neglected or refused to act") (cleaned up)).

"served for ninety days or more in the active military or [naval] service during the Civil War," *id*. (quoting 38 U.S.C. § 1501), with the Secretary of the Army being directed "to furnish, when requested, appropriate Government headstones or markers at the expense of the United States for the unmarked graves" of various persons, including "Soldiers of the Union and Confederate Armies of the Civil War," *id*. (quoting 24 U.S. § 279(a) (repealed 1 September 1973)).

¶ 20 Judge Tyson further contended that the monument was also protected by N.C.G.S. § 100-2.1, which provides, subject to certain exceptions, that "a monument, memorial, or work of art owned by the State may not be removed, relocated, or altered in any way without the approval of the North Carolina Historical Commission," N.C.G.S. § 100-2.1(a) (2021)), and restricts the removal or relocation of an "object of remembrance located on public property," § 100-2.1(b). According to Judge Tyson, plaintiffs "are seeking a declaratory judgment, restraining order, and injunction to enforce the statute, consistent with their threshold ownership of and role in securing and erecting the [monument] and the specific goals expressed in their charter," with it being necessary to satisfy these restrictions "*prior to* any efforts [that] are commenced to alter or remove the [monument]" if it "is determined to be owned by the State . . . or is located on State-owned property." *Id*. at 416 (emphasis in original).

¶ 21 Judge Tyson further asserted that, even though N.C.G.S. § 160A-193 "grants statutory authority to a municipality to act when a building or structure constitutes

an imminent danger to public health or safety," before taking action "the municipality must comply with federal and state laws and give required notice, a hearing, and ample opportunity to make the structure safe." *Id.* (citing *Monroe v. City of New Bern*, 158 N.C. App. 275 (2003)). Judge Tyson claimed the City "would [have acted] *ultra vires* to purport to declare a [m]emorial and war grave dedicated to dead and wounded veterans of that county, whether owned by Forsyth County or [plaintiffs] or the State to be a public nuisance"; that the City had "no lawful basis to declare the [monument] to be a public nuisance or to pre-emptively demand then unilaterally remove it from a property listed on the National Register of Historic Places without prior permission or agreement"; and that the City could have only removed the monument "after compliance with the applicable federal and state statutes." *Id.* at 416–17 (citing 18 U.S.C. § 1369; 36 C.F.R. § 60.15; N.C.G.S. § 100-2.1). As a result, Judge Tyson concluded that plaintiff's request for a declaratory judgment "invokes subject matter jurisdiction and states standing and claims for relief to survive [d]efendants' motions to dismiss." *Id.* at 417.

¶ 22    Finally, Judge Tyson contended that the City had "inexplicitly [sic] and unlawfully sought to declare the [monument] to dead and wounded veterans from Forsyth County to be a public nuisance, used taxpayer funds to dismantle and remove the [monument], and sought to relocate the [monument] to the Salem Cemetery without the agreement of the owners and in violation of federal and state law." *Id.*

at 418. After noting that "[t]emporary removal is permitted by agreement with the owner when required to preserve the [monument], which must be re-erected within ninety (90) days thereafter," *id.* (citing N.C.G.S. § 100-.21(b)), Judge Tyson asserted that this statutory provision had no application to the present case because defendants had made "no allegations of action to physically damage the [monument]" or "assert[ed] any agreement with [plaintiff], the State, or any other potential owner to dismantle, remove, or relocate the [monument]," *id.* In Judge Tyson's view, the majority's decision "[did] not address, explain, distinguish[,] nor refute any of the rules, precedents, laws, and statutes that are plead at the trial court, cited on appeal, and as controlling law, are clearly applicable to the facts and record," and that the trial court's decision to dismiss plaintiff's amended complaint with prejudice had been erroneous. *Id.* at 419. Plaintiff noted an appeal to this Court from the Court of Appeals' decision based upon Judge Tyson's dissent.

## II.  Analysis

### A. Standard of Review

This Court reviews a trial court's decision to grant or deny a motion to dismiss for lack of standing using a de novo standard of view, under which it "view[s] the allegations as true and the supporting record in the light most favorable to the non-moving party," *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008), with this being the applicable standard of review regardless of whether the complaint is

dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), *see Harris v. Matthews*, 361 N.C. 265, 271 (2007) (dismissal under Rule 12(b)(1)); *New Hanover Cnty. Bd. of Ed. v. Stein*, 380 N.C. 94, 2022-NCSC-9, ¶ 21 (dismissal under Rule 12(b)(6)). An appellate court considering a challenge to a trial court's decision to grant or deny a motion to dismiss for lack of subject matter jurisdiction may consider information outside the scope of the pleadings in addition to the allegations set out in the complaint. *See Harris*, 361 N.C. at 271. A complaint is properly dismissed pursuant to Rule 12(b)(6) "(1) when the complaint on its face reveals that no law supports [the] plaintiff's claim; (2) when the complaint reveals on its face the absence of fact[s] sufficient to make a [ ] claim; [or] (3) when some fact disclosed in the complaint necessarily defeats [the] plaintiff's claim." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 98 (2019) (quoting *Oates v. Jagg, Inc.*, 314 N.C. 276, 278 (1985)).

This Court reviews decisions of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *see also State v. Melton*, 371 N.C. 750, 756 (2018). In the event that the sole basis for a party's appeal of right is a dissent in the Court of Appeals, the Court's review is "limited to consideration of those issues that are (1) specifically set out in the dissenting opinion as the basis for that dissent, (2) stated in the notice of appeal, and (3) properly presented in the new briefs[.]" N.C. R. App. P 16(b); *see also C.C. Walker Grading & Hauling, Inc. v. S.R.F. Mgmt. Corp.*, 311 N.C. 170, 175 (1984)).

**B. Standing**

A plaintiff must establish standing in order to assert a claim for relief. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, 370 N.C. 553, 561 (2018); *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164 (2001). "As a general matter, the North Carolina Constitution confers standing on those who suffer harm." *Mangum*, 362 N.C. at 642 (citing N.C. Const. art. I, § 18 (providing that "[a]ll courts shall be open" and "every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law[.]")). As we have previously explained,

> "[t]he 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.' "

*Stanley v. Dep't of Conservation and Dev.*, 284 N.C. 15, 28 (1973) (quoting *Flast v. Cohen* 392 U.S. 83, 99 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))). Prior to our decision in *Committee to Elect Dan Forest v. Employee Political Action Committee*, 376 N.C. 558, 2021-NCSC-6, the Court of Appeals had consistently held that North Carolina's standing requirements were identical to those enforced in the federal courts, so that a plaintiff was required to show that he or she had suffered

> "(1) [an] 'injury in fact'—an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2)

> [that] the injury is fairly traceable to the challenged action of the defendant; and (3) [that] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Neuse River Found.*, 155 N.C. App. at 114, (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  In *Committee to Elect Dan Forest*, however, we held that, since the North Carolina Constitution does not contain the same "case-or-controversy" provision that appears in the United States Constitution, it does not require the existence of an "injury-in-fact" to establish standing.  *Comm. to Elect Dan Forest*, ¶ 85.  Instead, we held that, "[w]hen a person alleges the infringement of a legal right directly under a cause of action at common law, a statute, or the North Carolina Constitution . . . the legal injury itself gives rise to standing."  *Id.*[7]

Admittedly, neither the trial court nor the Court of Appeals had the benefit of our decision in *Committee to Elect Dan Forest* at the time that they addressed the standing issue that is before us in this case.  In light of that decision, to the extent that the lower courts relied upon plaintiff's failure to allege an "injury-in-fact" in determining that plaintiff lacked standing, any such determination constituted error.

---

[7] We did note that, "in directly attacking the *validity of a statute under the constitution*, a party must show they have suffered a 'direct injury.' " *Comm. to Elect Dan Forest*, ¶ 82 (quoting *State ex rel. Summerell v. Carolina-Virginia Racing Ass'n*, 239 N.C. 591, 594 (1954)) (emphasis added).  Although amicus Chatham for All, et al., argues that N.C.G.S. § 100-2.1 is unconstitutional as applied to Confederate monuments generally, no *party* in this case has attacked the validity of N.C.G.S. § 100-2.1 or any other statute.  As a result, we need not address whether plaintiff has sustained the sort of "direct injury" needed to support a challenge to the validity of a statutory provision enacted by the General Assembly.

On the other hand, this analytical flaw in the reasoning adopted by the trial court and the Court of Appeals does not change the fact that plaintiff has failed to establish standing in this case, so that the decisions of the trial court and the Court of Appeals with respect to the standing issue should be affirmed. *See Eways v. Governor's Island*, 326 N.C. 552, 554 (1990) (holding that, "[w]here a trial court has reached the correct result, the judgment will not be disturbed on appeal where a different reason is assigned to the decision").

¶ 27 In its brief, plaintiff advances a number of arguments, some of which it has asserted for the first time before this Court, in support of its contention that it has standing to pursue the claims asserted in the amended complaint. Although plaintiff has, in some instances, conflated its standing-related arguments with its arguments regarding the legally and conceptually distinct issue of whether the City's actions were authorized under the various state and federal laws cited by plaintiff, we will attempt to address each of its standing-related arguments in turn for the purpose of determining whether plaintiff has made the necessary showing of standing.

¶ 28 As an initial matter, plaintiff argues that, "to challenge a statute, municipal ordinance, policy, or action, a plaintiff need only demonstrate that it has been 'injuriously affected' by the enactment or policy or action," quoting *Goldston*, 361 N.C. at 35. In apparent reliance upon the law of taxpayer standing, *see id.* at 31–32, plaintiff contends that "[c]itizens and taxpayers have the right to seek equitable and

declaratory relief when governing authorities are preparing to put property dedicated to the public to an unauthorized use," citing *Wishart v. Lumberton*, 254, N.C. 94, 96 (1961). For that reason, plaintiff asserts that "[a] citizen, [acting] in his own behalf and that of all other taxpayers[,] may maintain a suit seeking to enjoin the governing body of a municipal corporation from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers," citing *Merrimon v. S. Paving & Const. Co.*, 142 N.C. 539, 545 (1906). In plaintiff's view,

> although a declaratory judgment action must involve an actual controversy between the parties, plaintiffs are not required to allege or prove that a traditional cause of action exists against defendants in order to establish an actual controversy. A declaratory judgment should issue (1) when it will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.

quoting *Goldson*, 361 N.C. at 33 (2006) (cleaned up). In view of the fact that the amended complaint "patently assert[s] and 'involve[s] an actual controversy between the parties,' " specifically a dispute over who owns the monument, plaintiff argues that it "does not have to claim sole ownership of the [monument] to possess standing in this declaratory judgment action."

¶ 29 Secondly, plaintiff claims to be entitled to claim associational standing because "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither

the claim asserted nor the relief requested requires the participation of individual members in the lawsuit," quoting *River Birch Assocs.*, 326 N.C. at 130. According to plaintiff, "individual members of [its] organization who live in Forsyth County would have standing to sue in their own right as taxpayers," citing *Charles Stores v. Tucker*, 263 N.C. 710, 717 (1965); *Fuller*, 145 N.C. App. at 395–96), with the fact that it is a nonprofit corporation in good standing in North Carolina and the fact that its "purposes include 'historical, benevolent, memorial, educational and patriotic programs' " sufficing to "clearly and equivocally give[ ] it an articulated interest in the status and preservation of objects of remembrance such as the [m]onument." As a result, plaintiff contends that the "fundamental premises" upon which it was founded "establish that its very existence is germane to the issues raised in this litigation" and that "a thorough presentation and inquiry into the relevant evidence and the applicable law does not require the active participation of [its] individual members[.]"

Thirdly, plaintiff contends that "the [amended] complaint alleges colorable claims that [its] members and its affiliated chapter were responsible for funding and erecting the [monument]," that "no governmental expenditures were involved in the enterprise," and that "[the County] is the owner of the monument." After conceding that any of its members who might have been involved in erecting the monument are no longer alive, plaintiff contends that, "as an incorporated entity which has affiliated

chapters made up of qualifying members, [it] has a perpetual existence for so long as it otherwise complies with the laws of the State of North Carolina," so that it "necessarily follows" that it "has succeeded to the interests of those deceased members of an affiliated chapter who were responsible for designing, funding, and erecting the [monument] in the first place." Plaintiff argues that "the [amended] complaint specifically alleges that the monument had its origins in the efforts of [p]laintiff and its subsidiary local chapter to design, fund, and erect the [monument]," that this allegation "is facially sufficient to state a particularized interest in the [monument]," and that the trial court erred by concluding that it lacked standing to maintain the present declaratory judgment action.

¶ 31        Finally, plaintiff claims that it "did not start this fight" and that it had, instead, been "clearly and specifically threatened with adverse consequences by the City of Winston-Salem if it failed or refused to remove the [monument]." According to plaintiff, "[t]o deny that [it] does not have the right to defend itself in a court of law when it was the recipient of a clear and unequivocal attack would be to subvert accepted and well-established concepts of due process and equal protection under law." Plaintiff asserts that, while it "does not have to claim sole ownership to possess standing in this declaratory judgment action," the City has "repeatedly asserted that [p]laintiff owned the [monument] in its demands and in other communications sent to [p]laintiff, while the other [d]efendants assert that ownership of the [monument]

is unknown." As a result, plaintiff contends that "[t]his action squarely raises the question of the ownership of the [monument]," and that "it is only logical to find that standing exists if an individual or entity is alleged to own an item of property as has been the case with allegations made concerning [p]laintiff and its alleged ownership of the [monument]."

¶ 32 Plaintiff's arguments rest upon a fundamental misunderstanding of the law of standing. In essence, plaintiff appears to believe that by simply filing a declaratory action and asserting that there was an "actual controversy between the parties" relating to the identity of the monument's owner, it has made a sufficient showing to establish standing. *See Goldston*, 361 N.C. at 33. However, as the majority of the Court of Appeals observed, "[t]he mere filing of a declaratory judgment is not sufficient, on its own, to grant a plaintiff standing," *United Daughters of the Confederacy*, 275 N.C. App. at 407 (citing *Beachcomber Prop.*, 169 N.C. App. at 824), with it being necessary for a party to establish standing as a prerequisite for the assertion of a declaratory judgment claim, *Goldston*, 361 N.C. at 33 (holding that plaintiffs had established taxpayer standing before "consider[ing] the form of *relief* sought by plaintiffs, who [had] filed a declaratory judgment action") (emphasis added); *see also Taylor v. City of Raleigh*, 290 N.C. 608, 620 (1976) (holding that the validity of a zoning ordinance could be challenged through a declaratory judgment action only after determining that the plaintiff had established standing). In other

words, plaintiff is still required to demonstrate that it has sustained a legal or factual injury arising from defendants' actions as a prerequisite for maintaining the present declaratory judgment action. *See Goldston*, 361 N.C. at 35 (noting that "[o]nly those persons may call into question the validity of a statute who have been *injuriously affected* thereby in their persons, property, or constitutional rights.") (quoting *Piedmont Canteen Serv., Inc. v. Johnson*, 256 N.C. 155, 166 (1962) (emphasis added in *Goldston*)); *Comm. to Elect Dan Forest*, ¶ 85 (holding that "[t]he North Carolina Constitution confers standing to sue in our courts on those who suffer *the infringement of a legal right*") (emphasis added).

¶ 33        A careful analysis of the amended complaint satisfies us that plaintiff has failed to identify any legal right conferred by the common law, state or federal statute, or the state or federal constitutions of which they have been deprived by defendants' conduct. For example, plaintiff has not claimed any proprietary or contractual interest in the monument that would support its contention that the removal of the monument constituted an "unlawful seizure" in violation of the Fourth Amendment or an "unlawful[ depriv[ation] of property without due process of law" in violation of the Fifth Amendment. Without asserting ownership over a piece of property, plaintiff cannot claim that the property was the subject of an unlawful seizure or deprivation. *See Maines v. City of Greensboro*, 300 N.C. 126, 134 (1980) (noting that "[a]t the threshold of any procedural due process claim is the question of whether the

complainant has a liberty or property interest, determinable with reference to state law, that is protectible under the due process guaranty" (citing *Bishop v. Wood*, 426 U.S. 341 (1976); *Presnell v. Pell*, 298 N.C. 715 (1979)). A number of plaintiff's other allegations, including its assertion that the City's actions "infringe[d] upon the freedom of speech of the [plaintiff] and the citizens of the County," that these actions "violate[d] the right of equal protection pursuant to the [Fourteenth] Amendment," and that "[p]laintiff will be irreparably harmed if [d]efendants take affirmative action to remove or relocate the [monument] prior to a full adjudication of the respective rights and obligations of the [p]arties," are nothing more than conclusory statements devoid of any factual or legal support. *See Krawiec v. Manly*, 370 N.C. 602, 610 (2018) (holding that "a complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets" (cleaned up)).

¶ 34        Although the amended complaint claims that the local chapter was involved in raising funds to erect the monument and that it received permission from the County to place the monument outside the old county courthouse building in 1905, plaintiff does not allege that the local chapter or any of its members retained an ownership interest in the monument or had executed a contract with the County providing that the monument would remain upon the old courthouse property in perpetuity. As a

result, even construing plaintiff's allegations concerning the funding for and erection of the monument as true, the mere fact that the local chapter "funded and erected the [monument]" does not suffice to establish standing in the absence of an affirmative claim to have some sort of proprietary or contractual interest in the monument. This is particularly true given that the plaintiff's allegations that the City's actions violated various state and federal laws, which we address in further detail below, assume that the *County*, rather than plaintiff, owns the monument.

¶ 35          In addition, our taxpayer standing jurisprudence makes it clear that, "where a plaintiff undertakes to bring a taxpayer's suit on behalf of a public agency or political subdivision, his complaint must disclose that he is a taxpayer of the agency [or] subdivision," *Branch v. Bd. of Ed. of Robeson Cnty.*, 233 N.C. 623, 626 (1951) (citing *Hughes v. Teaster*, 203 N.C. 651 (1932)); *see also Fuller*, 145 N.C. App. at 395–96, and "allege facts sufficient to establish" either that "there has been a demand on and a refusal by the proper authorities to institute proceedings for the protection of the interests of the public agency or political subdivision" or that "a demand on such authorities would be useless." *Id.* Although plaintiff has included such assertions in its brief before this Court, no such allegations appear in the amended complaint. *See Davis v. Rigsby*, 261 N.C. 684, 686 (1964) (noting that "[a] party is bound by his pleadings and, unless withdrawn, amended, or otherwise altered, the allegations

contained in all pleadings ordinarily are conclusive against the pleader").[8]  Instead, the amended complaint alleges that plaintiff is a nonprofit (and, therefore, non-taxpaying) corporation, *see DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 70 (2020) (holding, in the context of a motion for judgment on the pleadings, that the movant must show that the complaint "fails to allege facts sufficient to state a cause of action *or admits facts which constitute a complete legal bar thereto*" (emphasis added) (citation omitted)), and it does not allege that any of its members pay taxes to either the City or the County.  In addition, plaintiff has never alleged that it has brought this action "on behalf of" the City or the County, *Branch*, 233 N.C. at 626, or accused public officials of "misuse or misappropriation of public funds," *Goldston*, 361 N.C. at 33.  As a result, plaintiff's amended complaint simply does not make a valid claim of taxpayer standing in the manner required by this Court's precedent.

In the same vein, we hold that the amended complaint fails to allege sufficient facts necessary to establish associational standing.  Although plaintiff argues that it is a "legacy organization whose purposes include 'historical, benevolent, memorial,

---

[8] In addition, given that plaintiff did not advance this argument before the Court of Appeals, it is not permitted do so for the first time before this Court.  *See Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001) (noting the longstanding rule that "issues and theories of a case not raised below will not be considered on appeal;" *see also* N.C. R. App. P. 10(a) (providing that issues not raised in a party's brief are deemed abandoned).

educational and patriotic programs;' " that its charter "clearly and [un]equivocally gives it an articulated interest in the status and preservation of objects of remembrance such as the [m]onument;" that it "has succeeded to the interests of those deceased members of an affiliated chapter who were responsible for designing, funding, and erecting the [monument];" and that it has "a specific requirement for membership . . . that one is a lineal descendant of an individual who served in the government or the armed forces of the Confederacy," none of these factual allegations are raised in the amended complaint. In addition, the amended complaint does not identify any of plaintiff's individual members or describe how the legal rights of any of plaintiff's individual members have been violated. As a result, the amended complaint fails to allege facts sufficient to show that "the interests [plaintiff] seeks to protect are germane to the organization's purpose" or that its members "would otherwise have standing to sue in their own right." *River Birch Assocs.*, 326 N.C. at 130.

¶ 37        In addition, we are simply not persuaded that the purpose for which plaintiff was organized, standing alone, suffices to provide it with standing to maintain the present action. Aside from the fact that plaintiff has cited no authority to support its position, similar arguments have consistently been rejected by both the federal courts and our Court of Appeals. *See, e.g.*, *Gardner v. Mutz*, 360 F. Supp. 3d 1269, 1276 (M.D. Fla. 2019) (concluding that, even though the plaintiffs claimed "genealogical

relationships and membership in associations for particular historical and cultural foci," they "cannot base their standing on their preferences for the preservation of Confederate memorials" because such preferences "are not sufficiently particularized, but are general, public-interest grievances, and vindicating the public interest is the function of the legislative and executive branches, not the judicial branch" (cleaned up)), *vacated, in part, on other grounds*, 962 F.3d 1329 (11th Cir. 2020); *McMahon v. Fenves*, 323 F. Supp. 3d 874, 880 (W.D. Tex. 2018) (observing that the plaintiffs "may be more deeply attached to the values embodied by the Confederate monuments than the average student rushing to class or the mall, but their identities as descendants of Confederate veterans do not transform an abstract ideological interest in preserving the Confederate legacy into a particularized injury"); *Soc'y for Hist. Pres. of Twentysixth N.C. Troops, Inc. v. City of Asheville*, 282 N.C. App. 701, 2022-NCCOA-218, ¶¶ 26–27 (concluding that that neither a purported violation of N.C.G.S. § 100-2.1 nor the plaintiff's status as "a legacy organization which was responsible for" the restoration of a monument that was subsequently removed by the City of Asheville sufficed to "establish a legal injury suffered by [the] plaintiff sufficient to establish standing");[9] *Hist. Pres. Action Comm. v. Reidsville*, No. COA12-1386, 2013 WL 6096749, at *5 (N.C. Ct. App. Nov. 19, 2013) (unpublished) (concluding that the

---

[9] The decision in *Twentysixth North Carolina Troops* is particularly noteworthy because the Court of Appeals' analysis, unlike the earlier decision in this case, rested upon this Court's decision in *Committee to Elect Dan Forest*.

plaintiffs' claim that they "derived a particular aesthetic enjoyment from the [Confederate] monument and are injured by its removal" was insufficient to support a claim of standing).

¶ 38    Finally, plaintiff's assertion that it has standing because it "[has] the right to defend itself in a court of law when it was the recipient of a clear and unequivocal attack" finds no support in the law or the facts of this case.  Neither the allegations contained in the amended complaint nor the evidence contained in the record support plaintiff's contention that it was "clearly and specifically threatened with adverse consequences by the City of Winston-Salem if it failed or refused to remove the [monument]."  Instead, the amended complaint simply alleges that the City had "caused a letter to be sent to [plaintiff] stating that it had until January 31st, 2019 to remove [the monument]."  The letter itself, a copy of which appears in the record on appeal and the authenticity of which has not been questioned by any party, acknowledges that "[c]laims of ownership of the [monument] have come from the United Daughters of the Confederacy," directs plaintiff "to remove and relocate" the monument by 31 January 2019, and warns that "[f]ailure to comply with this directive may result in the [C]ity seeking a court order for the removal and relocation of the [monument] to preserve the same and to address public safety concerns[.]"  Although the letter does suggest that the City intended to utilize some sort of judicial process to facilitate the monument's removal in the event that plaintiff failed to remove it

voluntarily, neither the letter nor the amended complaint contains any threat that the City intended to institute legal action directly against plaintiff.

¶ 39      In addition, even if one takes the allegations contained in the amended complaint as true, the mere fact that the City sent plaintiff a letter in which it set a deadline for the removal of the monument does not automatically confer standing upon plaintiff, particularly given the absence of any allegation that plaintiff has any proprietary or contractual interest in the monument.  As the trial court correctly observed, plaintiff, as the party that initiated the lawsuit, has "the burden of proving that standing exists." *Chávez v. Wadlington*, 261 N.C. App. 541, 544 (2018) (quoting *Myers v. Baldwin*, 205 N.C. App. 696, 698 (2010)).[10]  Thus, for all these reasons, we hold that the amended complaint even "when liberally construed," *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 266 (2019), fails to allege "the infringement of a legal right directly under a cause of action at common law, a statute, or the North Carolina Constitution" sufficient to give plaintiff standing to challenge the City's actions in removing the monument from the old courthouse property, *Comm. to Elect Dan Forest*, ¶ 85.

---

[10] In the event that the City had brought suit against plaintiff for the purpose of forcing it to remove the monument, plaintiff would, of course been entitled to defend itself, with the City, rather than plaintiff, having been required to show that it had standing to seek the requested relief from plaintiff.

### C. State Law Claims

In addition, plaintiff argues that the City violated numerous provisions of state law by relocating the monument, with each of these claims appearing to rest upon the premise that the County owns the monument. A careful analysis of each of these claims in light of the allegations set out in the amended complaint satisfies us that plaintiff lacks standing to bring a claim under these statutes, that many of plaintiff's contentions are not properly before the Court, and that, in any event, plaintiff's arguments under these statutes lack sufficient legal support.

#### 1. N.C.G.S. § 100-2.1 (Protection of Monuments)

As an initial matter, plaintiff argues that the City "denied plaintiff due process of law and violated [N.C.G.S.] § 100-2.1" by removing the monument from the old courthouse property. N.C.G.S. § 100-2.1 ("Protection of monuments, memorials, and works of art") provides as follows:

> (a) Approval Required.--Except as otherwise provided in subsection (b) of this section, a monument, memorial, or work of art owned by the State may not be removed, relocated, or altered in any way without the approval of the North Carolina Historical Commission.
>
> (b) Limitations on Removal.--An object of remembrance located on public property may not be permanently removed and may only be relocated, whether temporarily or permanently, under the circumstances listed in this subsection and subject to the limitations in this subsection. An object of remembrance that is temporarily relocated shall be returned to its original location within 90 days of completion of the project that required its temporary

removal. An object of remembrance that is permanently relocated shall be relocated to a site of similar prominence, honor, visibility, availability, and access that are within the boundaries of the jurisdiction from which it was relocated. An object of remembrance may not be relocated to a museum, cemetery, or mausoleum unless it was originally placed at such a location. As used in this section, the term "object of remembrance" means a monument, memorial, plaque, statue, marker, or display of a permanent character that commemorates an event, a person, or military service that is part of North Carolina's history. The circumstances under which an object of remembrance may be relocated are either of the following:

> (1) When appropriate measures are required by the State or a political subdivision of the State to preserve the object.

> (2) When necessary for construction, renovation, or reconfiguration of buildings, open spaces, parking, or transportation projects.

(c) Exceptions.--This section does not apply to the following:

> (1) Highway markers set up by the Board of Transportation in cooperation with the Department of Environmental Quality and the Department of Natural and Cultural Resources as provided by Chapter 197 of the Public Laws of 1935.

> (2) An object of remembrance owned by a private party that is located on public property and that is the subject of a legal agreement between the private party and the State or a political subdivision of the State governing the removal or relocation of the object.

> (3) An object of remembrance for which a building inspector or similar official has determined poses a

threat to public safety because of an unsafe or
dangerous condition.

N.C.G.S. § 100-2.1.  According to plaintiff, N.C.G.S. § 100-2.1 "applies to the controversy between the [p]arties on the basis that the [monument] is patently an object of remembrance located on public property," with plaintiff having made "facially sufficient allegations tending to establish a colorable right of ownership of the [monument] in Forsyth County."  In addition, plaintiff appears to argue that N.C.G.S. § 100-2.1 gives plaintiff standing to challenge the monument's removal.

¶ 42       As support for its argument that the County owns the monument, plaintiff directs our attention to language appearing in the contract of sale and the deed transferring ownership of the old courthouse property from the County to Winston Courthouse "tend[ing] to establish that [the] County owns the [monument] and that it specifically and intentionally reserved easements for the purpose of maintaining the [monument.]"  Secondly, plaintiff notes that the amended complaint "alleges that members of its local chapter raised the funds necessary to design, build, and install the [monument] from private sources," that the local chapter "dedicated the [monument] to Forsyth County and its citizens," and that "the historical record establishes that the Forsyth County Commissioners expressly permitted the [monument] to be placed on land which the County owned[.]"  According to plaintiff, "[s]uch allegations are patently sufficient to invoke the provisions of [N.C.G.S.] § 100-

2.1 as a basis for adjudicating the rights and responsibilities of the respective parties to this dispute."

¶ 43 According to plaintiff, "[d]edication is a form of transfer, either formal or informal, in which one grants rights to the public in their property," citing *Spaugh v. Charlotte*, 239 N.C. 149 (1954). Plaintiff asserts that the amended complaint "alleges sufficient facts from which one could reasonably conclude that it was intended for the [monument] to be dedicated to public use and that the governing body of Forsyth County accepted such dedication on behalf of the citizens of the county." Arguing in reliance upon the deed transferring the old courthouse property to Winston Courthouse, plaintiff argues that "[i]t is patently nonsensical for [the] County to reserve easement rights with regard to the [monument] . . . for purposes of maintenance and repair if it did not in fact own the [monument]" and "the plot[ ] of land upon which [the monument was] situated."

¶ 44 Plaintiff then argues that, upon its placement on the courthouse property, the monument became a "fixture" attached to real property and that its status did not change when the County sold the property to Winston Courthouse, given that "[c]hattels of a heavy and permanent character, even though not imbedded or physically fastened to the land, but merely placed on the land and held in place by their own weight, such as a monument, are real fixtures," citing Webster's Real Estate Law in North Carolina § 2-1 (5th ed. 1999); *Snedeker v. Waring*, 12 N.Y. 170

(1854) (holding that a three-ton statue of George Washington that rested on a stone foundation without having been otherwise attached to the land constituted a "fixture" that was "part of the realty")).[11] In this case, plaintiff claims, the monument was "erected and placed upon [the courthouse property] with the express assent of the Forsyth County Commission" and "has become part of the realty[.]"

¶ 45     Plaintiff further argues that, in order for N.C.G.S. § 100-2.1(b) to apply, the object in question must be (1) an "object of remembrance" and (2) situated on public property. Plaintiff claims that the monument meets the first of these two criteria because "it is a monument of a permanent character that commemorates those who were killed in the Confederate armed forces during the Civil [War], a seminal event in the history of North Carolina." According to plaintiff, "[t]here is a factual dispute concerning whether the [monument] is situated on public property." In plaintiff's view, the monument *is* located on public property because (1) the monument was dedicated to the public and accepted by the County; (2) it was situated on real property belonging to the County; and (3) that the County reserved easements in the deed conveying the courthouse to Winston Courthouse, which plaintiff believes "is

---

[11] Although plaintiff raised this argument before the Court of Appeals, neither the majority nor the dissenting opinions addressed it. Even so, in light of our belief that it involves a purely legal issue and the fact that the law in this area is clear, we elect to address this contention rather than remanding the case to the Court of Appeals for further proceedings.

evidence tending to show that the [monument] continued to be situated on public property."

¶ 46 We are not persuaded by any of plaintiff's arguments. As an initial matter, plaintiff has completely failed to explain how the City's actions "denied plaintiff due process of law." In order to establish a due process violation, a plaintiff must identify a cognizable legal right of which it was allegedly deprived by the City's actions. *See State v. Thompson*, 349 N.C. 483, 491 (1998) (discussing the differences between substantive and procedural due process, both of which serve to protect a party's legal rights). Even if N.C.G.S. § 100-2.1 applies in the set of circumstances that is before us in this case, we are unable to conclude that it confers any legal rights upon plaintiff sufficient to give rise to any sort of due process claim or other valid legal claim.

¶ 47 "[A] statute may authorize a private right of action either explicitly or implicitly, though typically, a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Sykes v. Health Network Solutions, Inc.*, 372 N.C. 326, 338 (2019) (cleaned up); *see also Comm. to Elect Dan Forest*, ¶ 68–69 (acknowledging the General Assembly's "power to create causes of action and permit a plaintiff to recover in the absence of a traditional injury"). As a result, in the event that "the legislature exercises its power to create a cause of action under a statute," "the plaintiff has standing to vindicate the legal right *so long as he is in the class of persons on whom the statute confers a*

*cause of action.*" *Comm. to Elect Dan Forest*, ¶ 82 (emphasis added). Although this Court has not addressed the circumstances in which a statute *implicitly* authorizes a private cause of action, the Court of Appeals has concluded that "an implicit right of a cause of action exists when a statute requires action from a party, and that party has failed to comply with the statutory mandate." *Sugar Creek Charter Sch., Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 195 N.C. App. 348, 355 (2009) (citing *Lea v. Grier*, 156 N.C. App. 503, 508–09 (2003)).

¶ 48     We are unable to identify anything in N.C.G.S. § 100-2.1, particularly when read in conjunction with the allegations of the amended complaint, that explicitly authorizes the assertion of a private cause of action for the purpose of enforcing that statutory provision.[12] The absence of explicit language authorizing the assertion of a private right of action based on N.C.G.S. § 100-2.1 stands in stark contrast to the statute at issue in *Committee to Elect Dan Forest*, which specifically authorized a candidate for elected office who had complied with the relevant campaign finance laws to sue an opposing candidate or candidate committee for an alleged violation of those same laws. *See Comm. to Elect Dan Forest*, ¶ 6 (citing N.C.G.S. § 163-278.39A(f) (now repealed)). In addition, even assuming, without deciding, that the Court of

---

[12] After recognizing that the statute "is not self-executing in that no enforcement mechanism is provided under its terms," plaintiff simply asserts that "the statute is a clear and unequivocal expression of public policy by the General Assembly." A mere expression of legislative policy, without more, is not sufficient to support the recognition of a right on the part of any particular party to assert a private right of action.

Appeals has correctly identified the circumstances under which a statute implicitly authorizes a private right of action in *Sugar Creek Charter School*, nothing in N.C.G.S. § 100-2.1 "requires action from a party" with which "that party has failed to comply[.]" 195 N.C. App. at 356. Instead, N.C.G.S. § 100-2.1 *prohibits* the removal or relocation of certain specified objects that are owned by the State or located on public property. Finally, even if N.C.G.S. § 100-2.1 could be interpreted to implicitly authorize the assertion of a private right of action, nothing in the relevant statutory language or the allegations contained in the amended complaint suggests that plaintiff would be "in the class of persons on which the statute confers the right[.]" *Comm. to Elect Dan Forest*, ¶ 67; *see also Charles Stores*, 263 N.C. at 717 (holding that "[o]nly one who is in immediate danger of sustaining a direct injury from legislative action may assail the validity of such action," and that it "is not sufficient that he has merely a general interest common to all members of the public").

In addition, we further conclude that, even if plaintiff is entitled to assert a private right of action to enforce N.C.G.S. § 100-2.1, that statutory provision has no application to the facts that are before us in this case in light of the allegations contained in the amended complaint. As an initial matter, it is undisputed that, prior to its removal, the monument stood on property that had been privately owned by

Winston Courthouse since 2014.[13]  Although plaintiff has advanced a number of arguments in an attempt to avoid the consequences of this undisputed fact, none of them have any merit.  For example, the fact that the deed transferring the old courthouse property to Winston Courthouse contained an exclusion relating to the monument and contemplated the reservation of an easement for the monument's maintenance does not, as plaintiff asserts, establish that the County owns the monument,[14] given that a party cannot transfer title to property in which it lacks any sort of ownership interest.  63C Am. Jur. 2d Property § 43.  In the event that the County did not own the monument, its exclusion from the conveyance could simply

---

[13] N.C.G.S. § 100-2.1 had an effective date of 23 July 2015, which was more than a year after the County conveyed the old courthouse property to Winston Courthouse.  Nothing in the relevant statutory language suggests that N.C.G.S. § 100-2.1 was intended to have any sort of retroactive application to transactions that had occurred prior to the statute's effective date.  *See* Cultural History Artifact Management and Patriotism Act of 2015, S.L. 2015-170, § 3(c), 2015 N.C. Sess. Laws 435, 437.  "It is a well-established rule of construction in North Carolina that a statute is presumed to have prospective effect only and should not be construed to have a retroactive application unless such an intent is clearly expressed or arises by necessary implication from the terms of the legislation."  *State v. Green*, 350 N.C. 400, 404 (1999).

[14] As we have already noted, even though the deed transferring the old courthouse property from the County to Winston Courthouse contemplates that Winston Courthouse would execute certain easements in favor of the County, the record contains no indication that any such easements were ever executed or recorded.  "An express easement must be in writing pursuant to the Statute of Frauds and be sufficiently certain to permit the identification and location of the easement with reasonable certainty."  *Singleton v. Haywood Elec. Membership Corp.*, 151 N.C. App. 197, 202 (2002).  As a result, a mere agreement to create an easement in the future does not suffice to actually create such an easement, *see id.* at 203 (holding that the plaintiff's contractual obligation to furnish "all necessary easements and rights-of-way" to the defendant did not, by itself, create an easement), and there is no contention in the amended complaint that any sort of implied easement exists or even could exist in this situation.

have reflected the County's recognition that it could not warrant title to that piece of property, s*ee Culbreth v. Britt Corp.*, 231 N.C. 76, 80 (1949) (defining a warranty of title as "an agreement of the warrantor to make good by compensation in money any loss directly caused by the failure of the title which his deed purports to convey"), and nothing in the amended complaint refutes this assumption. As a result, the mere exclusion of an item of personal property from a conveyance of real property is not tantamount to an affirmative claim of ownership over the excluded property.

¶ 50        Although its "fixture-related" argument is not entirely clear to us, plaintiff appears to be contending that, because the monument was "dedicated to public use" at the time that it was placed on the old courthouse property, it became part of the "real property belonging in fee simple to Forsyth County." Although the general rule in this jurisdiction is that "whatever is attached to the land is understood to be part of the realty," "[w]hether a thing attached to the land be a fixture or chattel personal, depends upon the agreement of the parties, express or implied." *Lee-Moore Oil Co. v. Cleary*, 295 N.C. 417, 419 (1978) (quoting *Feimster v. Johnson*, 64 N.C. 259, 260–61 (1870)). In this case, however, there is no allegation in the amended complaint nor any evidence in the record regarding the intent of either plaintiff, its local chapter, or the County with respect to the issue of whether the monument became "part of the realty" at the time of its installation. Instead, the amended complaint alleges that the County granted plaintiff "*permission* to erect a memorial." As we stated in *Lee-*

*Moore Oil*, "[a] building, or other fixture which is ordinarily part of the realty, is held to be personal property when placed on the land of another by contract or consent of the owner." *Id.* at 420 (quoting *Feimster*, 64 N.C. at 261).[15]

¶ 51      Alternatively, plaintiff may be contending that, in the event that the real property upon which a fixture is located is conveyed to another party and the fixture is excluded from the conveyance, the real property beneath the fixture is excluded from the transfer as well. For example, plaintiff argues in its brief that "the reservation of easements by the County in its deed conveying the old courthouse for the purpose of maintaining monuments and plaques on [the courthouse property] is evidence tending to show that the [monument] continued to be situated on public property." However, plaintiff cites no authority in support of this novel proposition, which cannot be found in any of this Court's precedent, and nothing in the amended complaint serves to justify adoption of plaintiff's apparent position. *Cf. Bond v. Coke*, 71 N.C. 97, 100 (1874) (holding that "personal chattels which have been fixtures are

---

[15] Although the amended complaint alleges that the monument "was dedicated" during a ceremony in 1905, it does not explain what plaintiff means by "dedicated." In its brief, plaintiff claims, in reliance upon *Spaugh*, that what occurred in 1905 constituted a "dedication" for "public use." However, *Spaugh* defined "dedication" as "the intentional appropriation *of land* by the owner to some public use." 239 N.C. at 159 (emphasis added). Even if *Spaugh* applies to both personal and real property, we have held that, "[w]here property is dedicated or set apart without restriction merely for public uses, the municipal authorities may determine for what use it is appropriate and shall be used, and, if not irrevocably dedicated or appropriated by them to any particular public use, its use may be changed as the public convenience and necessities require." *Wishart*, 254 N.C. at 96 (quoting 64 C.J.S. Mun. Corp. § 1818).

incorporated in, and are, a part of the land as much so as a house or tree, until an actual severance and therefore, a deed conveying the land *without excepting therein the fixtures*, has legal effect of passing the [chattels], which are part and parcel of the land") (emphasis added). In the event that we were to accept plaintiff's argument as valid, we would necessarily also have to hold that, when a landowner grants timber rights to another, the grantee gains title not only to the tree but also to the discrete pieces of land upon which the tree is located. *Cf, e.g., Hornthal v. Howcott*, 154 N.C. 228 (1911). Such a result would be completely inconsistent with long-standing principles of North Carolina property law.

¶ 52 The facts at issue in this case are similar to those that were before the Court of Appeals in *National Advertising Co. v. North Carolina Department of Transportation*, in which an advertising company, acting in accordance with a five-year lease, erected a billboard upon real property that it did not own. 124 N.C. App. 620, 622–23 (1996). After purchasing the property upon which the billboard was located, the North Carolina Department of Transportation sent a letter to the advertising company in which it requested that the billboard be removed at the Department's expense. *Id.* After the Department removed the sign following the advertising company's refusal to do so, the advertising company sought damages on the basis of an inverse condemnation claim. *Id.* at 623. As a result of the fact that no lease agreement relating to the billboard had ever been recorded, the Court of

Appeals held that the advertising company did not have any interest in the underlying real property, that the advertising company had no right to insist that the billboard remain on the property, and that, since the billboard was "abandoned property," the Department had every right to remove the billboard from its property without paying compensation to the advertising company. *Id.* at 624–25. In the same vein, we conclude that, in the event that plaintiff remained the owner of the monument and that the County had granted permission to place the monument upon the old courthouse property, the monument had become abandoned property following the transfer of the old courthouse property to Winston Courthouse, and that Winston Courthouse, as a subsequent owner, was entitled to have the monument removed. For all these reasons, we hold that, based on the facts alleged in the amended complaint and contained in the record that is before us, the monument was not "located on public property," and N.C.G.S. § 100-2.1(b) has no application to this case.

¶ 53        Similarly, we are not persuaded that N.C.G.S. § 100-2.1(a) has any bearing upon the proper resolution of this case given the absence of any allegation in the amended complaint that the monument is "owned by the State." Although "counties and their respective boards of county commissioners are 'creatures of the General Assembly and serve as agents and instrumentalities of State government,'" *Silver v. Halifax Cnty. Bd. of Comm'rs*, 371 N.C. 855, 866 (2018) (quoting *Stephenson v.*

*Bartlett*, 355 N.C. 354, 364 (2002)), the General Assembly has specifically authorized counties to independently acquire, maintain, and dispose of real or personal property, *see* N.C.G.S. §§ 153A-158, 169, 176; *see also Davis v. Forsyth Cnty.*, 117 N.C. App. 725, 727 (1995) (concluding that the county was a "person" for purposes of the cartway statute because "counties are established as legal entities and are empowered by law to acquire land") (citing N.C.G.S. § 153A-158). Similarly, the North Carolina Constitution authorizes counties and municipalities to own property independently of the State. *See* N.C. Const. art. V, § 2 (providing that "[p]roperty belonging to the State, counties, and municipalities shall be exempt from taxation"). As a result, even if the County owns the monument, that fact would not convert the monument into State property subject to N.C.G.S. § 100-2.1(a). As a result, for all of these reasons, N.C.G.S. § 100-2.1 has no bearing upon the proper resolution of this case.

### 2. *N.C.G.S. Chapter 116B (Unclaimed Property)*

Secondly, plaintiff argues that the City violated N.C.G.S. §§ 116B-2,[16] B-56, and B-59 by removing the monument from the old courthouse property "without first giving notice and complying with procedures required by such statutes with regard to abandoned or unclaimed property whose owner cannot be ascertained." In plaintiff's view, "[t]he gist of [its] claim for a declaratory judgment is the initial determination of ownership of the [monument,]" with N.C.G.S. § 116B-51 *et seq.*,

---

[16] Recodified at N.C.G.S. § 116B-2.2 (2021).

having enunciated "comprehensive guidelines and procedures to be employed in order to ascertain ownership of the property alleged to be abandoned or unclaimed, and for the transfer of such property to the State." According to plaintiff, "[i]f the [monument] were deemed to be abandoned or unclaimed, it would escheat to the State," at which point "the State would then be subject itself for the manner in which it exercised possession of the [monument] under [N.C.G.S. § 100-2.1]." Plaintiff asserts that neither the City nor the County "has made any effort to invoke the provisions of Chapter 116B in order to ascertain whether the [monument] has been abandoned or unclaimed" and have, instead, "unilaterally undertaken to decide who owns the [monument], who is responsible for it, and what will be done with it." In plaintiff's view, "due process of law requires more than the blatant assertion of the right to decide a question on the part of a governmental unit without giving interested parties meaningful notice and opportunity to be heard."

¶ 55        As an initial matter, we note that plaintiff did not present this "abandoned property" argument to the Court of Appeals or include any allegations supporting it in the amended complaint, but instead it was advanced for the first time in Judge Tyson's dissent. Aside from the fact that "issues and theories of a case not raised below will not be considered on appeal," *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 309 (2001); *see also* N.C. R. App. P. 10(a), arguments raised by a dissenting judge at the Court of Appeals on his or her own

motion cannot serve as a basis for an appeal to this Court either, *see M.E. v. T.J.*, 380 N.C. 539, 2022-NCSC-23, ¶ 65; *see also Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402 (2005) (per curium) (noting that "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant"). In addition, even if plaintiff's "abandoned property" argument was otherwise properly before us, we note that plaintiff's amended complaint does not assert a claim under the Unclaimed Property Act and, instead, demonstrates that no such claim could be sustained.

¶ 56        The Unclaimed Property Act defines "property" as

> (i) money or tangible personal property held by a holder that is *physically located in a safe deposit box or other safekeeping depository held by a financial institution* within this State or (ii) a fixed and certain interest in *intangible property or money* that is held, issued, or owed in the course of a holder's business, or by a government, governmental subdivision, agency, or instrumentality, and all income or increments therefrom.

N.C.G.S. § 116B-52(11) (emphasis added). In light of this definition, the monument as described in the amended complaint simply cannot qualify as abandoned property that has escheated to the State. In addition, nothing in the amended complaint suggests that plaintiff is within the class of persons entitled to notice before the monument would escheat to the State. The statute provides that the "apparent owner" of abandoned property is entitled to at least 60 days' notice before the holder of the property reports the property abandoned to the State Treasurer, N.C.G.S. §§ 116B-59–60, with "apparent owner" being defined as "a person whose name

appears on the records of a holder as the person entitled to property held, issued, or owing by the holder," N.C.G.S. § 116B-52(1). As a result, since plaintiff has not claimed any proprietary or contractual interest in the monument or otherwise alleged facts that would qualify it as the "apparent owner" of the monument, it has failed to establish a claim for relief under the Unclaimed Property Act.

### 3. N.C.G.S. § 160A-193 (Abatement of Nuisances)

Thirdly, plaintiff asserts that the City violated N.C.G.S. § 160A-193 by declaring the monument to be a public nuisance and removing it without providing plaintiff with the required statutory notice, an opportunity to be heard, and a reasonable opportunity to make the monument safe. In view of the fact that N.C.G.S. § 160A-193 provides, in pertinent part, that "[a] city shall have the authority to summarily remove, abate, or remedy everything in the city limits, or within one mile thereof, that is dangerous or prejudicial to the public health or public safety," N.C.G.S. § 160A-193(a), plaintiff contends that "the authority of a city to act under this statutory grant of authority [without notice] is expressly limited to those situations in which a building or other structure constitutes an imminent danger to the public health or safety, creating an emergency necessitating the structure's immediate demolition," and that "cities may not summarily demolish structures merely because it is quicker and easier to do so than providing the owners notice and an opportunity to be heard," citing *Monroe*, 158 N.C. App. at 278 (2003)). According

to plaintiff, even though the City "has alleged in public statements that the [monument] presented a danger to public safety, there is no evidence that such is the case."

¶ 58        In addition, plaintiff contends that, "[i]f a city wishes to destroy a structure that does not pose an imminent threat to the public, then the city must follow the procedures required by [N.C.G.S.] §§ 160A-441 through 160A-450," citing *Newton v. City of Winston-Salem*, 92 N.C. App. 446, 449 (1988), which require the City to "provid[e] the owner with notice, a hearing, and a reasonable opportunity to bring his or her dwelling into conformity with the housing code," citing N.C.G.S. § 160A-443. In plaintiff's view, the City "has unlawfully sought to use its statutory authority to abate nuisances which pose a threat to public health and safety by making claims which are patently bogus even under its own court filings in order to avoid the reach and limitation of [N.C.G.S. § 100-2.1]." Plaintiff contends that, if it were determined to be the owner of the monument, "it would necessarily follow that [p]laintiff has standing to defend the placement of the [monument] on [the courthouse property], as well as to invoke the arguments that the [monument] does not constitute a public nuisance under [N.C.G.S.] § 160A-193."

¶ 59        A careful review of the record and the allegations contained in the amended complaint satisfies us that plaintiff lacks standing to challenge the City's determination that the monument had become a public nuisance. N.C.G.S. § 160A-

193(a) authorizes a city to "summarily remove, abate, or remedy everything in the city limits . . . that is dangerous or prejudicial to the public health or public safety." In *Monroe*, a case upon which plaintiff places substantial reliance, the Court of Appeals concluded that N.C.G.S. § 160A-193 authorizes a city "to summarily demolish a building only if the building constitutes an imminent danger to the public health or safety, creating an emergency necessitating the building's immediate demolition," 158 N.C. App. at 278. Otherwise, the city must comply with the procedures set forth in Chapter 160A, Article 19 (now Chapter 160D, Article 12),[17] including the requirement that it provide notice and an opportunity to be heard to the *owner*. *Id.*; *see also Newton*, 92 N.C. App. at 451–52 (holding that the city had failed to give the *owner* actual notice of its intent to demolish his property, in violation of the statutory notice requirements) (emphasis added).

¶ 60 N.C.G.S. § 160D-1203, which governs the demolition of a "dwelling" that is deemed to be "unfit for human habitation," provides that

> [w]henever a petition is filed with the public officer by a
> public authority or by at least five residents of the
> jurisdiction charging that any dwelling is unfit for human

---

[17] Although Chapter 160A, Article 19 (N.C.G.S. §§ 160A-441 *et seq.*) was repealed and substantively recodified in Chapter 160D, Article 12 (N.C.G.S. § 160D-1201 *et seq.*), the provisions upon which plaintiff relies are virtually unchanged. *See* An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State, S.L. 2019-111, 2019 N.C. Sess. Law 424. In light of this fact and the fact that the new statute is retroactively applicable, *see* An Act to Complete the Consolidation of Land-Use Provisions into One Chapter of the General Statutes, S.L. 2020-25, https://www.ncleg.gov/EnactedLegislation/SessionLaws/PDF/2019-2020/SL2020-25.pdf, we cite to the current statutory provisions in the text of this opinion.

> habitation or when it appears to the public officer that any dwelling is unfit for human habitation, the public officer shall, if a preliminary investigation discloses a basis for such charges, issue and cause to be served *upon the owner of and parties in interest in such dwellings* a complaint stating the charges in that respect and containing a notice that an administrative hearing will be held before the public officer, or the officer's designated agent, at a place within the county in which the property is located.

N.C.G.S. § 160D-1203(2) (emphasis added). An "owner" for purposes of N.C.G.S. § 160D-1203(2) is "the holder of the title in fee simple and every mortgagee of record," while "parties in interest" is defined as "[a]ll individuals, associations, and corporations that have an interest of record in a dwelling and any that are in possession of a dwelling." N.C.G.S. § 160D-1202(1)–(2). In view of the fact that plaintiff did not allege in the amended complaint that it had any proprietary or contractual interest in the monument or that it has an "interest of record" or is "in possession of" the monument, plaintiff is simply not a member of the class of persons entitled to notice and an opportunity to be heard under N.C.G.S § 160D-1203(2). In addition, N.C.G.S. § 160D-1201 *et seq.* only applies to "dwellings," which is defined as "[a]ny building, structure, manufactured home, or mobile home, or part thereof, *used and occupied for human habitation or intended to be so used*[.]" N.C.G.S. §§ 160D-102(15), 1201(a) (emphasis added). Given that plaintiff has failed to allege facts pursuant to which the monument would qualify as a "dwelling" as defined above, its

removal is not subject to N.C.G.S. § 160D-1201 *et seq.* As a result, plaintiff's challenges to the City's nuisance declaration are without merit.

**D. Federal Law Claims**

¶ 61 In addition, plaintiff has advanced a number of arguments in reliance upon federal law in an apparent attempt to demonstrate that the amended complaint sufficiently alleged that the County owns the monument and that the City acted unlawfully in removing it. First, plaintiff asserts that the old courthouse was listed on the National Register of Historic Places in 2013 at the recommendation of the County and the North Carolina Department of Cultural and Natural Resources, and that this is significant because 54 U.S.C. § 302105(a) provides that the property owner must be given the opportunity to concur in or object to the property's inclusion on the National Register before that property can be listed there. Plaintiff further asserts that "the evidence would show that the [monument] was not excluded from the application or from the designation" and that the County had failed to explain how it "could initiate and fund the process for [the] designation of [the courthouse] as a National Historic Landmark without owning the property in the first place[.]"

¶ 62 Secondly, plaintiff argues that, "[a]s a veteran's memorial and a war grave for those who did not return home and listed on the National Register, the [monument] is arguably protected from injury or destruction by the 'Veterans' Memorial Preservation and Recognition Act of 2003,' " citing 18 U.S.C. § 1369 (2018), and

asserts that, "[u]nder Federal law, the term 'veteran' is defined to include persons who 'served for ninety days or more in the active military or nav[a]l service during the Civil War,'" citing 38 U.S.C. § 1501 (2018). In plaintiff's view, the City "ha[d] no lawful basis to declare the [monument] to be a public nuisance or to pre-emptively demand and then unilaterally remove it from a property listed on the National Register of Historic Places without prior permission or agreement," nor may it do so without complying with the applicable state and federal laws, citing 18 U.S.C. § 1369 (2018); 36 C.F.R. § 60.15; N.C.G.S. § 100-2.1(b). We are not persuaded by any of these arguments.

¶ 63        As an initial matter, we note that, like its arguments relating to the Unclaimed Property Act, plaintiff failed to assert any claim in reliance upon the Unclaimed Property Act in the amended complaint or present any argument in reliance upon that statute to the trial court or the Court of Appeals and, instead, simply adopted this argument from Judge Tyson's dissent. For that reason, this argument is not properly before the Court. *See Westminster Homes*, 354 N.C. at 309; *M.E.*, ¶ 65; *Viar*, 359 N.C. at 402; N.C. R. App. P. 10(a). In addition, when considered in light of the record and the allegations contained in the amended complaint, plaintiffs' arguments are completely devoid of merit. A careful reading of the relevant statutory provisions demonstrates that none of the federal statutes or regulations upon which plaintiff now relies creates a private cause of action authorizing plaintiff to enforce them. *See*

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) (observing that "the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief"); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (concluding that, even though Congress has the authority to create legal rights by statute, that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").[18]  As a result, plaintiff does not have the right to assert a claim against defendants on the basis of any of the statutory provisions mentioned in the dissent.

Aside from this fundamental procedural defect in its argument, plaintiff has failed to explain how the placement of the old courthouse property on the National Register of Historic Places had the effect of precluding the removal or relocation of the monument.  In the event that plaintiff is seeking to invoke the National Historic Preservation Act, P.L. 89-665, now codified at 54 U.S.C. 300101 *et seq.*, the only potentially relevant provision is 54 U.S.C. § 306108, which requires federal agencies, "prior to the approval of the expenditure of any Federal funds on [any Federal or federally assisted] undertaking or prior to the issuance of any license, [to] take into

---

[18] Unlike claims brought under state law, which do not require a showing of "injury in fact," *Committee to Elect Dan Forest*, ¶ 85, claims brought under federal law are subject to a traditional "injury-in-fact" requirement, *Lujan*, 504 U.S. at 560.

account the effect of the undertaking on any historic property." According to well-established federal law, the statutorily required review process "applies by its terms only to *federally funded* or *federally licensed* undertakings." *Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 760 (D.C. Cir. 2003) (quoting *Sheridan Hist. Ass'n v. Christopher*, 49 F.3d 750, 755 (1995)) (emphasis in *Sheridan*). In *Monumental Task Committee, Inc. v. Foxx*, a federal district court concluded, on facts similar to those at issue here, that, unless efforts by the City of New Orleans to remove a controversial monument were "either federally funded or federally licensed, [§ 306108] does not apply." 240 F. Supp. 3d 487, 496 (E.D. La. 2017). As a result of the fact that plaintiff "[has] not [alleged or] argued, let alone presented any evidence, that removal of the [monument] [was] federally funded, permitted, approved, or licensed," "[§ 306108] is inapplicable to the removal of the [monument]." *Id.* Plaintiff also argues that the City was required to comply with 36 C.F.R. § 60.15, but that regulation governs only how properties are removed from the National Register and says nothing about what happens when the property itself is relocated or even demolished altogether.

¶ 65    Finally, plaintiff's contention that the monument is a "memorial and war grave" that is "protected from injury" or destruction under 18 U.S.C. § 1369 lacks merit given that the relevant statutory provision only applies to a "structure, plaque, statue, or other monument" that "is located *on property owned by, or under the jurisdiction of, the Federal Government.*" 18 U.S.C. § 1369(b)(2) (emphasis added).

Aside from the fact that plaintiff has not alleged, and the record does not otherwise reflect any basis for concluding, that the monument is located on federal land, 18 U.S.C. § 1369 is a criminal statute, and "[p]rivate citizens have no standing to institute a federal criminal prosecution and no power to enforce a criminal statute." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 592 (E.D. La. 2016) (cleaned up); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").[19]  As a result, none of plaintiff's arguments in reliance upon various provisions of federal law provide any basis for a determination that plaintiff has the right to maintain the present action against defendants.

**E. Dismissal with Prejudice**

Finally, plaintiff argues that the trial court erred by dismissing its amended complaint with prejudice after ruling that plaintiff lacked standing to maintain a declaratory judgment action regarding ownership of the monument.  In plaintiff's view, "[a] dismissal for want of jurisdiction under Rule 12(b)(1) does not constitute an adjudication on the merits of the case" and "is without prejudice to a plaintiff's ability to bring a second action which is factually and legally sufficient to establish

---

[19] Although plaintiff directs our attention to 24 U.S.C. § 279, which authorized the Secretary of the Army to furnish headstones for unmarked graves, including those of soldiers who served in the Union and Confederate armies, that statute was repealed in 1973.  *See* Pub. L. 93-43, § 7(a)(1), (5), (7).  In addition, the effect of this provision upon the viability of plaintiff's claims is, at best, unclear.

jurisdiction in the court before which the second action is brought," citing Restatement (Second) of Judgments § 19 (1982). In addition, plaintiff argues that "[a] personal judgment for the defendant for lack of jurisdiction, although valid and final, does not bar another action by the plaintiff on the same claim," citing Restatement (Second) of Judgments § 20 (1982)); *Cline*, 92 N.C. App. at 257. As a result, plaintiff concludes that "[a] court cannot make its order an adjudication on the merits" and dismiss the claim with prejudice "if it lacks the power to decide the merits of the case in the first place."

¶ 67        A review of the relevant precedent discloses that both this Court and the Court of Appeals have held that the absence of standing can be raised in a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See, e.g., Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 337 (2000); *Teague v. Bayer AG*, 195 N.C. App. 18, 22 (2009). On the other hand, we have also consistently recognized that standing is a "necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Willomere Cmty. Ass'n*, 370 N.C. at 561 (citations and quotation marks omitted); *see also Thomas v. Oxendine*, 280 N.C. App. 526, 2021-NCCOA-661, ¶ 18 (observing that "[s]tanding is required to confer subject matter jurisdiction") (citing *Wellons v. White*, 229 N.C. App. 164, 176 (2013)); *Apple v. Commercial Courier Exp., Inc.*, 168 N.C. App. 175, 177 (2005) (noting that, "[i]f a party does not have standing to bring a claim, a court has no subject matter

jurisdiction to hear the claim"). In addition, our earlier decisions indicating that the absence of standing can be asserted by means of a motion to dismiss for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) appear to rest upon the notion, which we have recently rejected, that standing for purposes of North Carolina law requires the allegation of an "injury in fact." *See Comm. to Elect Dan Forest*, ¶ 66 (observing that, "in a common law action where actual injury is a necessary element of the claim, such as negligence, the proper disposition for failure to allege actual injury or damages is not dismissal for lack of standing, but dismissal for failure to state a claim upon which relief can be granted").

¶ 68    "Although the practical consequence of dismissal of a complaint under Rule 12(b)(6) or 12(b)(1) is the same—the case is dismissed—the legal effect is quite different." *Cline*, 92 N.C. App. at 263. In the event that a complaint is dismissed for failure to state a claim, that decision constitutes a final judgment on the merits for res judicata purposes and bars the plaintiff from maintaining another action on the basis of this same claim. Rest. (Second) of Judgments § 19 cmt. d. (1982); *Clancy v. Onslow Cnty.*, 151 N.C. App. 269, 272 (2002) (noting that "it is well settled in this State that a dismissal under Rule 12(b)(6) operates as an adjudication on the merits unless the court specifies that the dismissal is without prejudice" (cleaned up)). On the other hand, when a complaint is dismissed for lack of subject matter jurisdiction, that decision does *not* result in a final judgment on the merits and does not bar

further action by the plaintiff on the same claim. Rest. (Second) of Judgments § 20 cmt. e.; *Street v. Smart Corp.*, 157 N.C. App. 303, 305 (2003) (observing that "a dismissal under [Rule 12]b(1) is not on the merits and thus not given res judicata effect" (cleaned up)).

¶ 69       In this case, the trial court dismissed the amended complaint on the basis of a determination that, since plaintiff lacked standing, it lacked jurisdiction over the subject matter of plaintiff's claims. For the reasons set forth above, the trial court correctly concluded that plaintiff had failed to allege the infringement of a "legally enforceable right" sufficient to establish standing for purposes of North Carolina law. *See Comm. to Elect Dan Forest*, ¶ 85. Thus, since the trial court lacked subject matter jurisdiction over plaintiff's claims, the amended complaint was properly dismissed pursuant to Rule 12(b)(1). N.C.G.S. § 1A-1, Rule 12(b)(1); *Catawba Cnty. ex re. Rackley v. Loggins*, 370 N.C. 83, 87 (2017). In view of the fact that the trial lacked jurisdiction over the subject matter of plaintiff's claims, the trial court erred by also dismissing the amended complaint for failure to state a claim for which relief could be granted pursuant to Rule 12(b)(6), *see Flowers v. Blackbeard Sailing Club, Ltd.*, 115 N.C. App. 349, 353 (1994) (vacating that portion of the trial court's order dismissing the plaintiff's complaint with prejudice after affirming the trial court's dismissal decision based on lack of subject matter jurisdiction), *disc. rev. improvidently allowed*, 340 N.C. 357 (1995), with the Court of Appeals having erred

as well by affirming the trial court's decision with respect to that issue. As a result, we vacate the portion of the trial court's order dismissing the amended complaint with prejudice and remand this case to Superior Court, Forsyth County, with instructions to dismiss the amended complaint *without*, rather than with, prejudice.

### III. Conclusion

Thus, we reaffirm our longstanding rule that a plaintiff must establish standing to bring an action pursuant to the Declaratory Judgment Act. *See Goldston*, at 361 N.C. at 33. As this Court held long ago, the Declaratory Judgment Act "does not license litigants to fish in judicial ponds for legal advice." *Lide v. Mears*, 231 N.C. 111, 117 (1949). For the reasons set forth above, we hold that the trial court did not err by dismissing the amended complaint for lack of standing. On the other hand, we further hold that the trial court erred by dismissing the amended complaint with, rather than without, prejudice. As a result, we affirm the Court of Appeals' decision, in part; reverse the Court of Appeals' decision, in part; and remand this case to Superior Court, Forsyth County, for further proceedings not inconsistent with this opinion.

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.

Chief Justice NEWBY concurring in the result only.

Plaintiff United Daughters of the Confederacy, North Carolina Division, Inc., filed an amended complaint on 6 February 2019 against the City of Winston-Salem (the City), the County of Forsyth (the County), and Winston Courthouse, LLC challenging the City's decision to remove a monument from Courthouse Square in Winston-Salem, North Carolina. In its amended complaint, plaintiff alleges that it is a nonprofit corporation organized under the laws of North Carolina, it is authorized to do business in the state, and it maintains its principal place of business in Wake County, North Carolina. Plaintiff describes its organization in the amended complaint solely with this language and does not identify who is involved in its organization or indicate where its members reside.[1]

In its amended complaint, plaintiff alleges that the City declared the monument a public nuisance and planned to move the monument from Courthouse Square. Plaintiff alleges that the removal process proposed by the City violates various rights of plaintiff, including freedom of speech, due process, and equal protection and constitutes an unlawful seizure. Plaintiff also claims the City's actions "violate . . . [N.C.G.S.] Chapter 100, Section 100, *et seq*, the Protection of Monuments, Memorial[s,] and Works of Art Act" and infringe upon the rights, duties, privileges,

---

[1] Plaintiff does identify its local chapter, the James B. Gordon Chapter #211, which is based out of Winston-Salem, North Carolina, in its amended complaint. The local chapter, however, filed a notice of voluntary dismissal from the present case on 1 May 2019, prior to entry of the trial court's order, and is not a party to this appeal.

obligations, liabilities, and immunities of the County and the United States Department of the Interior.

¶ 73     In its amended complaint, plaintiff asks for a declaratory judgment to determine the parties' rights, duties, privileges, obligations, liabilities, and immunities with respect to the monument. Plaintiff also requests a declaratory judgment to determine whether the City misapplied N.C.G.S. § 160A-193 and City Ordinance 62-3(b) in declaring the monument a public nuisance. Additionally, plaintiff seeks a preliminary injunction enjoining defendants from altering, removing, or causing damage to the monument prior to a decision in the case. Because the City has since removed the monument from Courthouse Square, however, only plaintiff's request for a declaratory judgment remains.

¶ 74     The task here is to determine whether the allegations in plaintiff's amended complaint are sufficient to establish standing to seek a declaratory judgment. Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, *Taylor v. City of Raleigh*, 290 N.C. 608, 620–21, 227 S.E.2d 576, 583–84 (1976), and standing is required to seek a declaratory judgment, *see Goldston v. State*, 361 N.C. 26, 33, 637 S.E.2d 876, 881 (2006) (holding that the plaintiffs established standing before "consider[ing] the form of relief sought by [the] plaintiffs, who [had] filed a declaratory judgment action"). "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the

controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.' " *Willowmere Cmty. Ass'n v. City of Charlotte*, 370 N.C. 553, 556–57, 809 S.E.2d 558, 561 (2018) (alteration in original) (quoting *Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973)). "Until a party has a real and vested interest in the subject matter of a lawsuit, an action will not lie." *Pierson v. Buyher*, 330 N.C. 182, 186, 409 S.E.2d 903, 906 (1991).

Here the allegations of plaintiff's amended complaint fail to establish standing. Although plaintiff identifies itself as a nonprofit corporation doing business in North Carolina, plaintiff fails to allege who comprises its organization and where its members live. Plaintiff does not identify any individual members of its organization in its amended complaint or allege the requirements for membership. Further, there is no indication in the amended complaint that any members of plaintiff's organization reside in Winston-Salem or Forsyth County. Without more information regarding the membership of the organization and where its members reside, plaintiff has failed to demonstrate that its organization or its members have any interest in the monument that is the subject of this case. Moreover, because plaintiff failed to include sufficient allegations in its amended complaint regarding its membership and organizational structure, plaintiff cannot establish taxpayer standing or associational standing. *See Branch v. Bd. of Educ.*, 233 N.C. 623, 626, 65 S.E.2d 124,

126 (1951) ("[W]here a plaintiff undertakes to bring a taxpayer's suit . . . , his complaint must disclose that he is a taxpayer of the [political] subdivision."); *see also River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 130, 388 S.E.2d 538, 555 (1990) (holding that a litigant may bring suit on an associational standing theory if "its members would otherwise have standing to sue in their own right" (quoting *Hunt v. Wash. State Apple Advert. Comm.*, 432 U.S. 333, 343 (1977))). Further, plaintiff does not allege ownership or a legal interest in the monument.

Thus, the bare allegations set forth in plaintiff's amended complaint are insufficient to establish standing. *See Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 2021-NCSC-6, ¶ 82 (requiring "a person [to] allege[ ] the infringement of a legal right . . . [for] the legal injury itself [to] give[ ] rise to standing"). As such, the Court lacks subject matter jurisdiction over plaintiff's claims. Because there is no subject matter jurisdiction over plaintiff's claims, dismissal of plaintiff's amended complaint without prejudice is proper. Therefore, I agree with the majority that the proper disposition is dismissal without prejudice. Accordingly, I concur in the result only.

Justices BERGER and BARRINGER join in this concurring opinion.